*In re* TAMMY D. (The People of the State of Illinois, Petitioner-Appellee, v. Tammy D., Respondent-Appellant).

Fifth District    No. 5—01—0983

Opinion filed May 8, 2003.

Jeff M. Plesko, William E. Coffin, and Anthony E. Rothert, all of Guardianship and Advocacy Commission, of Chicago, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The respondent, Tammy D., appeals from an order of the circuit court of Madison County denying her motion to vacate an agreed order that required her to attend outpatient mental health treatment for 90 days following her release from Alton Mental Health Center (Alton). On appeal, the respondent contends that the trial court's motion denying her motion to vacate must be reversed because the agreed order was the result of coercion, duress, mistake, and grossly disparate bargaining positions between the State and the respondent and contravened both the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 2000)) and public policy. We affirm.

## FACTS

The respondent voluntarily admitted herself to Alton on August 8, 2001. On August 14, 2001, she filed a written request for discharge. On August 15, 2001, the State filed a petition for involuntary admission. A hearing was held on the State's petition on August 23, 2001. During the hearing, the State presented testimony that the respondent suffers from schizoaffective disorder, bipolar type. Not only had the respondent been admitted to Alton on three previous occasions, but she had also been admitted to other community hospitals for mental health treatment.

The respondent's symptoms include agitation, verbal aggression, paranoia, and delusions. On August 14, 2001, the respondent threatened an Alton staff member with a clothes hanger, and on

August 21, 2001, she threatened a psychiatrist. According to Dr. Lenora Brown, a clinical psychologist at Alton, the respondent took only some of her medication and failed to attend all her treatment sessions. Dr. Brown opined that the respondent needed to stay at Alton until her acute symptoms could be better managed and until she could be placed in a less restrictive environment. At the time of the hearing, Dr. Brown did not believe that there was any less restrictive setting that was appropriate for the respondent. The projected date of the respondent's completion of treatment was September 22, 2001.

At the end of Dr. Brown's testimony, the respondent moved to dismiss the petition for involuntary admission because it had not been set for a hearing within five days of her receipt of the petition, as required by section 3—403 of the Code (405 ILCS 5/3—403 (West 2000)). The trial court agreed with the respondent and dismissed the petition for involuntary admission. On August 24, 2001, the State filed a new petition for involuntary admission. On August 30, 2001, that petition was dismissed on the basis that it was filed following a request for discharge but had not been filed within five days of the request for discharge, as required by section 3—403 of the Code.

On August 31, 2001, the respondent signed a request for voluntary admission and remained a voluntary recipient. On September 28, 2001, the State filed a petition for outpatient treatment, after the respondent's treatment team decided that the respondent was no longer in need of inpatient treatment and could function in a less restrictive setting if she received outpatient treatment, including counseling and medication. On October 2, 2001, that petition was withdrawn because the respondent's "housing situation [was] not resolved as anticipated." On October 5, 2001, another petition for outpatient treatment was filed. The file also shows that on October 2, 2001, the respondent, through the Legal Advocacy Service, Guardianship and Advocacy Commission, Anthony Rothert, of counsel, moved to strike and dismiss the petition for outpatient treatment on the ground that the petition was insufficient in that there is no statutory authority that requires a voluntary recipient to comply with outpatient treatment.

During the hearings on the petition for outpatient treatment, the respondent continued to be represented by attorney Anthony Rothert of the Legal Advocacy Service, Guardianship and Advocacy Commission. On October 11, 2001, the respondent and her attorney appeared before the trial court and agreed to an order for outpatient treatment. The order provided that the respondent would be treated at Mid-America Behavioral Healthcare and by Dr. Tomas of St. Mary's Hospital for 90 days. The trial court specifically questioned the respondent regarding whether or not she agreed to this order:

"Q. [THE COURT:] You're in full agreement to [sic] this document?

A. Yes, sir, I am.

Q. Do you understand[,] by [the court] entering this order[,] that you will be discharged, but you will be treated at MidAmerica Behavioral Healthcare located in Belleville, and this order will remain in effect for 90 days, correct?

A. Yes.

[THE COURT:] Okay, [t]hank you."

The trial court then signed the agreed order for outpatient treatment.

On November 1, 2001, the respondent, through her attorney, moved to vacate the agreed order. In the motion, the respondent set forth that while she was willing to participate in outpatient treatment, there was no statutory authority that could require her to do so. A hearing was conducted on the motion on November 21, 2001. The respondent's attorney, Anthony Rothert, was present, but the respondent failed to appear. Rothert told the trial court that he had no idea why the respondent was not present. Rothert admitted that the respondent had consented to the entry of the agreed order, but he explained that she had changed her mind and wanted the order vacated. He stated that the respondent simply did not want to be ordered to undergo treatment, even though she had agreed to it. The State responded that the order had not been forced upon the respondent and that it was a voluntary order agreed to by the respondent and approved by the court and provided the respondent with a less restrictive environment than Alton. The State further suggested that there might have been a different outcome if the respondent had not agreed to outpatient treatment: "[I]t's possible[ ] that the staff would have taken the position that she should be declared an involuntary patient." The trial court denied the motion to vacate, stating in pertinent part as follows:

"The Court will note[ ] that[ ] and just for the record state that [the respondent] was present. I was the judge and approved the order. My recall was[—]I asked her if this is her agreement which she desires to do, and she advised me yes[;] *** the time to raise a defense would have been at the time and prior to the entry of that order. There has to be some conclusion to litigation and a reasonable basis, and I believe this would be an unreasonable situation, and therefore I am denying the motion to vacate motion and dismiss petition."

The respondent now appeals.

## ANALYSIS

■ We first point out that the agreed order for outpatient treat-

ment expired 90 days after it was entered, which means the instant action has been moot since January 9, 2002. Nevertheless, a moot action is reviewable if (1) the duration of the challenged action made it too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the respondent could be subjected to the same action again. *In re Cynthia S.*, 326 Ill. App. 3d 65, 66, 759 N.E.2d 1020, 1022 (2001). Because both criteria are met in the instant case, we will review the challenged order.

The respondent contends that the trial court's order denying her motion to vacate the agreed order for outpatient mental health treatment must be reversed because she only agreed to the order in exchange for her release from Alton and that, thus, the agreement was the result of coercion, duress, mistake, and grossly disparate bargaining positions between the parties and contravened both the Code and public policy. The respondent insists that the only inference that can be drawn from the totality of the circumstances is that her acceptance of the order was not voluntary and that the order is void. The State replies, and we agree, that as a matter of law and public policy a respondent in a mental health proceeding has the right to settle his or her case by agreeing to an order for outpatient treatment. The record in the instant case simply fails to support the respondent's assertions that the agreed order was the result of offensive conduct on the part of the State and that her acceptance of the agreement was not voluntary.

■ Mental health proceedings are civil, not criminal, in nature. *In re Nau*, 153 Ill. 2d 406, 429, 607 N.E.2d 134, 145 (1992). The public policy of Illinois favors settlements in civil cases, and settlements, once made, should be final. *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 585, 582 N.E.2d 265, 267 (1991). A settlement agreement is typically not subject to appellate review because an agreed order "is a recordation of the agreement between the parties and is not a judicial determination of the parties' rights." *In re Haber*, 99 Ill. App. 3d 306, 309, 425 N.E.2d 1007, 1009 (1981). An agreed order cannot be set aside unless the party seeking to set it aside shows that the order resulted from fraud, duress, coercion, unfair dealing, gross disparity in the position or capacity of the parties, or newly discovered evidence. *In re Haber*, 99 Ill. App. 3d at 309, 425 N.E.2d at 1009. A trial court's determination on the good-faith nature of a settlement is a matter within its discretion and will be reversed on appeal only if the trial court abused its discretion. *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 191-92, 756 N.E.2d 836, 840 (2001).

■ "[A settlement,] [i]n legal parlance, implies meeting of minds of parties to transaction or controversy; an adjustment of differences

or accounts; a coming to an agreement. [Citation.] To fix or resolve conclusively; to make or arrange for final disposition." Black's Law Dictionary 1372 (6th ed. 1990). Contrary to the respondent's assertions, the agreed order in the instant case fits within this definition and constitutes a settlement between the respondent and the State. Had the respondent not agreed to outpatient treatment, the State could have filed a petition for involuntary commitment. The State took that action on August 14, 2001, after the respondent decided she no longer wanted to be a voluntary patient. The State could have taken the same approach if the respondent had refused to agree to outpatient treatment.

As for the good-faith nature of the settlement, the record here shows no sign of fraud, duress, unfair dealing, or wrongful conduct on the part of the State. The respondent has a long history of mental illness and was treated at Alton on three prior occasions. In this instance, the respondent voluntarily admitted herself to Alton on August 8, 2001. On August 14, 2001, the State filed a petition to have her involuntarily committed. The respondent was successful in having that petition dismissed, but she followed by signing another voluntary admission form on August 31, 2001. If the respondent had not signed another petition for voluntary admission after successfully having petitions for involuntary commitment dismissed, then we would agree that the respondent had been illegally detained. However, under the circumstances presented here, we cannot say that the respondent was illegally denied a discharge.

While we agree with the respondent that there was disparity between the parties' positions, we cannot agree that this necessitates that the order requiring her to complete 90 days of outpatient treatment, to which she agreed, be set aside. The respondent was represented by a qualified and competent attorney who specializes in mental health matters. When the motion in question came before the trial judge, the respondent's attorney made what he described as "a purely legal argument." The respondent's attorney did not contend that the respondent had been subjected to fraud, duress, coercion, or any sinister methods on the part of the State, but he simply explained that the respondent "just changed her mind" about treatment. However, because the respondent had previously agreed to outpatient treatment, the disposition was final, and she was required to comply with the order that settled the case.

The record here also reveals that the respondent's treatment team acted in good faith and made considerable efforts to find the respondent the proper treatment and placement. By September 28, 2001, the respondent progressed to the point that inpatient treatment

was no longer necessary, and the State filed a petition for outpatient treatment. However, the State withdrew that petition on October 2, 2001, because the respondent's housing situation had not been resolved. This action indicates that the State was taking into account the respondent's best interests and was acting in good faith. After the State filed another petition for outpatient treatment, the respondent agreed to 90 days of outpatient treatment. The trial court specifically remembers asking the respondent if she agreed to outpatient treatment and the respondent assuring the court that she did. Neither the trial court nor the respondent's attorney remembered the respondent expressing reservations about the order at the time she agreed to it.

Allowing the respondent to rescind her agreement in the instant case would be tantamount to holding that no settlement agreement could ever be reached in a mental health proceeding. As a result, the State would be required to seek many more involuntary commitment orders, which, as the Illinois Supreme Court has explained, are not as clinically effective as voluntary treatment. See *In re Hays*, 102 Ill. 2d 314, 319-20, 465 N.E.2d 98, 100 (1984). The settlement reached by the respondent and the State in the instant case appears to have been made in good faith and cannot now be unilaterally altered by the respondent. The respondent has failed to convince us that the settlement was void or against public policy.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

KUEHN and DONOVAN, JJ., concur.