*In re* MICHAEL H., Alleged to Be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Michael H., Respondent-Appellant).

Fifth District   No. 5—07—0557

Opinion filed July 7, 2009.—Rehearing denied July 30, 2009.

Barbara A. Goeben and Veronique Baker, both of Guardianship and Advocacy Commission, of Alton, for appellant.

Randall Rodewald, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The respondent, Michael H., appeals an order finding him subject to involuntary admission after he waived his right to a hearing on the petition to find him subject to involuntary admission. He argues that (1) it is impossible to waive a hearing because the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1—100 *et seq.* (West 2006)) does not contemplate such a waiver, (2) if a hearing can be waived, the court must conduct an inquiry into the

respondent's capacity to waive a hearing, (3) if a respondent waives a hearing—thus agreeing to be committed—he must be treated as a voluntary admittee, (4) he received the ineffective assistance of counsel because his attorney failed to put on any evidence to rebut the evidence that he was subject to involuntary admission, and (5) the petition failed to comply with applicable statutes. We reverse.

The respondent, Michael H., has a long history of mental illness. He was placed in the custody of the Department of Children and Family Services as an infant due to inadequate parental supervision. At the age of three, he underwent surgery to remove a brain tumor. This led to a history of seizures. A guardian was appointed for Michael in November 2005.

Michael H. was admitted to Chester Mental Health Center (Chester) on April 1, 2004, after being found unfit to stand trial on charges of battery and obstruction of justice in Lake County. These charges stemmed from his attempt to escape from a group home by jumping from a second-story window. The charges alleged that he hit a security guard and gave a false name to a police officer who tried to apprehend him after the jump. Michael was subsequently found fit and tried on those charges. He was acquitted on April 28, 2005. Although the record is not entirely clear on his status, it appears that he has remained in Chester since that time. Presumably, he was found subject to involuntary admission after his acquittal and then found subject to continued involuntary admission on successive petitions.

On September 20, 2007, the petitioner filed a petition for involuntary admission, alleging that Michael continues to be a person subject to involuntary admission pursuant to section 3—813(b) of the Mental Health Code (405 ILCS 5/3—813(b) (West 2006)). The petition alleged that, due to mental illness, Michael was a danger to himself or others and was unable to provide for his basic physical needs or protect himself from harm without help. Attached to the petition were two certificates of examination. One was provided by clinical social worker Carla Hileman and dated September 13, 2007. The other was provided by Dr. A. Gesmundo, a psychiatrist who examined Michael on September 4, 2007.

In Hileman's certificate of examination, she stated that throughout 2004, Michael was aggressive and often refused medication. His medication was changed in January 2005, and he improved somewhat after that. In May 2005, however, his condition deteriorated. Hileman suspected that he was again refusing to take the medications, and she attributed his decline to this refusal. She further stated that between March and September of 2007, Michael's behavior was cyclical, alternating between cooperative and aggressive.

Dr. Gesmundo's certificate echoed Hileman's description of Michael's behavior. In addition, Dr. Gesmundo diagnosed Michael with bipolar-type schizoaffective disorder and opined that if Michael were removed from a secure inpatient setting, he would likely stop taking his medication and harm himself or others.

On September 26, 2007, the court convened for a hearing on the petition. The entire hearing consisted of the following colloquy between the trial judge and Michael's attorney, Jeremy Walker:

"MR. WALKER: Prior to coming to court this morning, I had an opportunity to meet with Mr. [H.] I discussed with him the pending petition for involuntary commitment, involuntary admission, and he indicated he would give up his right to the hearing scheduled for this morning.

THE COURT: *** Mr. [H.], were you able to hear and understand what your attorney, Mr. Jeremy Walker, stated to the Court?

[Michael H.]: Yeah. He said I would be here for another six months.

THE COURT: Okay. And he indicated that you have no objection to the Court signing the order for your involuntary commitment to the Department of Human Services?

[Michael H.]: Yeah.

THE COURT: Okay. Let the record show the Court finds that Mr. [H.] has knowingly and voluntarily waived his right to have the involuntary commitment hearing this morning, and he shall be recommitted."

The court entered an order finding Michael H. subject to continued involuntary admission the same day. This appeal followed on October 4, 2007.

■ On January 26, 2009, just nine days before this case was set for oral argument, the State filed a motion to cite additional authority. It sought to cite a June 2008 unpublished order of this court that involved an appeal from a trial court order finding Michael subject to continued involuntary admission six months prior to the order at issue here. On January 30, 2009, we ordered the State's motion taken with the case. We now deny that motion.

Unpublished orders are not precedential authority and may only be cited to support claims of double jeopardy, *res judicata*, collateral estoppel, or law of the case. 166 Ill. 2d R. 23(e). Here, the State does seek to cite the unpublished order to support a contention that the issues raised in this appeal are barred by *res judicata* and collateral estoppel. We reiterate, however, that the previous unpublished order addressed an appeal of a previous order. As we will explain in more detail later in this opinion, the Mental Health Code requires that a court hold hearings every six months to determine whether a

respondent remains subject to involuntary admission. See 405 ILCS 5/3—813(b) (West 2006). The issues involved in each such hearing will, necessarily, be the same. However, each hearing is required to comply with the procedures in the Mental Health Code. At issue in Michael's previous appeal was whether the hearing for an order involuntarily admitting Michael from March to September 2007 met these standards, while this appeal concerns the hearing for an order involuntarily committing him from September 2007 to March 2008. Because *both* hearings were required to comply with the provisions of the Mental Health Code, Michael's arguments that the latter hearing failed to meet those standards are not barred by *res judicata* or collateral estoppel because the evidence adduced and the factual determinations may not be the same even though the problems he challenges are essentially the same. See *In re Israel*, 278 Ill. App. 3d 24, 32-33, 664 N.E.2d 1032, 1037 (1996) (explaining that where successive proceedings under the Mental Health Code necessarily involve new factual determinations, the new proceedings are not barred by *res judicata* or collateral estoppel). For these reasons, we deny the State's motion to cite additional authority.

■ We must first consider our jurisdiction to consider this appeal. As the State contends, the issues Michael H. raises are moot. The September 2007 order expired in March 2008. Thus, no ruling of this court can provide effective relief to Michael H. See *In re Mark W.*, 348 Ill. App. 3d 1065, 1069, 811 N.E.2d 767, 770 (2004) (explaining that, due to the expiration of the order for the involuntary administration of psychotropic drugs there at issue, any opinion the court rendered would be advisory). Ordinarily, courts of appeal lack jurisdiction to consider moot issues because we lack the authority to render opinions where we are unable to grant effective relief. *In re Mark W.*, 348 Ill. App. 3d at 1069, 811 N.E.2d at 770, citing *In re Mary Ann P.*, 202 Ill. 2d 393, 401, 781 N.E.2d 237, 242 (2002). However, we find that this appeal falls within the public-interest exception to the mootness doctrine.

Under the public-interest exception, we may consider an appeal that is otherwise moot if (1) the issues presented are of a public nature, (2) an authoritative determination would provide guidance for public officials, and (3) the issues are likely to recur. *In re Mark W.*, 348 Ill. App. 3d at 1069, 811 N.E.2d at 771, citing *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 242-43. Both this court and the supreme court have found that the procedures to be followed when ordering the involuntary treatment of mental health patients are matters of considerable public concern. See *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 243; *In re Mark W.*, 348 Ill. App. 3d at 1070, 811 N.E.2d

at 771. The issue of a respondent's waiver of the involuntary commitment hearing has been raised in at least three other cases now pending in this court. Given the importance of the issues raised, we find that "there is a 'need to make an authoritative determination for future guidance of public officers' " (*In re Alfred H.H.*, 233 Ill. 2d 345, 357 (2009), quoting *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365, 710 N.E.2d 1226, 1227 (1999)). See *In re Phillip E.*, 385 Ill. App. 3d 278, 282, 895 N.E.2d 33, 39 (2008); *In re Evelyn S.*, 337 Ill. App. 3d 1096, 1102, 788 N.E.2d 310, 315 (2003). Due to the short duration of an order for an involuntary admission, the issues raised in this appeal are likely to recur without an opportunity for appellate review. See *In re Phillip E.*, 385 Ill. App. 3d at 282, 895 N.E.2d at 39. We will thus consider Michael H.'s appeal under the public-interest exception.

The State contends that we should decline to address the merits of Michael's arguments, because he waived them by failing to raise them before the trial court. The State further contends that he is precluded from raising these issues by principles of estoppel, because he agreed to the trial court's order and then appealed without first filing a motion to reconsider. We note that waiver is a limitation on the parties, not the courts. *People v. Velez*, 388 Ill. App. 3d 493, 504, 903 N.E.2d 43, 53 (2009). We also note that there is no requirement that a litigant file a motion to reconsider before filing an appeal. The State nevertheless complains that this was "duplicitous behavior" which should not be rewarded. We do not agree. The main question in this appeal is whether a court can allow a respondent in Michael H.'s position to agree to waive all the rights involved in a hearing without violating his rights. Under these circumstances, to find the issue waived or precluded by estoppel would beg the question. Moreover, we have already concluded that considering the merits of this appeal will provide needed guidance to trial courts and attorneys involved in mental health proceedings. We therefore choose to address the merits of the respondent's claims.

At the heart of this appeal are three interrelated issues. Michael H. contends that (1) it is not possible to waive the right to a hearing on a petition for involuntary admission, (2) if it is possible to waive a hearing, the court must at least inquire into the respondent's capacity to decide to do so, and (3) if a respondent agrees to be admitted without a hearing, he must be treated as a voluntary admittee. The State argues that (1) it is possible to "settle" a mental health case by agreeing to an order for an involuntary admission, (2) all people, including respondents in proceedings under the Mental Health Code, are presumed competent to direct their legal affairs, and (3) a voluntary admission is not a substitute for an involuntary admission.

Before addressing the parties' arguments directly, we believe that an overview of the statutory procedures to be followed in proceedings on petitions for involuntary admission and the important interests those procedures are meant to protect would be useful.

■ A mentally ill person is subject to involuntary admission *only* if it is necessary to protect that person or others from harm as a result of the mental illness. 405 ILCS 5/3—601(a) (West 2006). A petition alleging that a person is subject to involuntary admission must include a detailed description of the signs and symptoms of mental illness, as well as the actions or behavior giving rise to the alleged need for an involuntary admission. 405 ILCS 5/3—601(b)(1) (West 2006). The petition for involuntary admission must be supported by two certificates of examination. One must be provided by a psychiatrist; the other can be provided by a psychiatrist, physician, clinical psychologist, or clinical social worker. 405 ILCS 5/3—703 (West 2006).

The petition for involuntary commitment must be filed with the court within 24 hours after the respondent is admitted. The court must hold a hearing within five days of the petition being filed. 405 ILCS 5/3—611 (West 2006). At the hearing, the respondent has the right to counsel (405 ILCS 5/3—805 (West 2006)), the right to be present at the hearing (405 ILCS 5/3—806(a) (West 2006)), and the right to have a jury determine whether he is subject to involuntary admission (405 ILCS 5/3—802 (West 2006)). The court must find the respondent subject to involuntary admission by clear and convincing evidence. 405 ILCS 5/3—808 (West 2006). Furthermore, the court cannot make this finding unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined the respondent testifies at the hearing. 405 ILCS 5/3—807 (West 2006); see also *In re Michelle J.*, 209 Ill. 2d 428, 435, 808 N.E.2d 987, 991 (2004) (explaining that the statutory requirement is satisfied *only* by the testimony of an expert who has personally examined the respondent).

Finally, even after all of these procedural requirements are met, a patient cannot be subjected to mental health services indefinitely. An initial order for an involuntary admission is valid for 90 days. 405 ILCS 5/3—813(a) (West 2006). If the patient's treating physicians believe that the patient is in need of a continued admission at the end of this period, they must file a new petition for continued involuntary admission. The new petition—as well as all proceedings thereunder—must comply with all the statutory requirements applicable to an initial petition. If the court finds by clear and convincing evidence that the respondent continues to be subject to involuntary admission, it may enter an order that will be valid for 180 days. 405 ILCS 5/3—813(b) (West 2006).

Receiving mental health services involuntarily involves a " 'massive curtailment of liberty.' " *In re Barbara H.*, 183 Ill. 2d 482, 496, 702 N.E.2d 555, 561 (1998), quoting *Vitek v. Jones*, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980). Thus, courts have long recognized that mentally ill patients have a constitutional liberty interest in refusing treatment. *In re Michelle J.*, 209 Ill. 2d at 437, 808 N.E.2d at 992; *In re John R.*, 339 Ill. App. 3d 778, 785, 792 N.E.2d 350, 356 (2003). The procedures codified in our Mental Health Code are meant to protect these important interests and to "ensure that Illinois citizens are not subjected to such services improperly." *In re Barbara H.*, 183 Ill. 2d at 496, 702 N.E.2d at 561-62. Thus, Illinois courts have repeatedly emphasized the importance of following the procedures prescribed in the Mental Health Code in order to fully protect the rights of patients like Michael H. who are alleged to be subject to treatment they do not wish to receive. See, *e.g.*, *In re Michelle J.*, 209 Ill. 2d at 437, 808 N.E.2d at 992; *In re Nancy A.*, 342 Ill. App. 3d 355, 364, 795 N.E.2d 377, 385 (2003).

These principles apply to any orders authorizing involuntary health care, be it an admission to a hospital, the administration of psychotropic medications, or outpatient care. See *In re Barbara H.*, 183 Ill. 2d at 493, 702 N.E.2d at 560 (explaining that although the statute providing a right to counsel only "refers to involuntary admissions, it is equally applicable to proceedings with respect to the involuntary administration of psychotropic medication"). It is worth noting, however, that an order for involuntary admission infringes on a patient's liberty in two ways: in addition to being subjected to psychiatric care the patient presumably did not want to receive (see *In re Evelyn S.*, 337 Ill. App. 3d at 1106, 788 N.E.2d at 318 (explaining that "an order for involuntary admission is also an order for treatment")), a respondent found subject to involuntary commitment is additionally restricted from moving about at will. This makes an involuntary-commitment order inherently more restrictive than other types of mental health orders. It is with these principles in mind that we consider the parties' contentions.

Michael H. argues that the Mental Health Code does not contemplate a waiver of the entire hearing. He points out that, although the Mental Health Code provides specific procedures for a waiver of certain procedural rights—such as the right to counsel (405 ILCS 5/3—805 (West 2006)) and a waiver of the right to be present at the hearing (405 ILCS 5/3—806 (West 2006))—the Mental Health Code provides no similar procedure for a waiver of the entire hearing (see also 405 ILCS 5/3—807 (West 2006) (providing that a respondent may waive the requirement of testimony, but only subject to court approval)). He

further argues that, because of the importance of the rights at issue, the proceedings involved cannot be conducted in a *pro forma* manner. See *In re John R.*, 339 Ill. App. 3d at 785, 792 N.E.2d at 356. Alternatively, Michael argues that, assuming a respondent alleged to be subject to involuntary admission may waive his right to a hearing, the court must at least make an inquiry into the respondent's capacity to do so. He further contends that the court must treat the respondent as a voluntary admittee.

The State characterizes the court's order as an "agreed order" and points out that any other type of civil case can be settled without specific statutory authority. The State further argues that, as a matter of public policy, mental health patients who realize that they need more treatment should be allowed to agree to orders involuntarily admitting them because it will nearly always be in their best interests. Despite the inherent contradiction involved in the concept of agreeing to something that is involuntary, the State argues that treating a respondent in Michael H.'s position as a voluntary admittee is an inadequate substitute for an agreed order for an involuntary commitment for two reasons. The State argues that, first, there is no reason to think that Michael would have sought a voluntary admission absent the petition for involuntary admission and that, second, if his admission is deemed voluntary, he could immediately change his mind and request a discharge. See 405 ILCS 5/3—403 (West 2006). The State counters Michael's argument that the court erred in failing to inquire into his capacity to waive the right to a hearing by pointing out that even mentally ill patients are presumed to be competent to make decisions regarding their representation. See *In re Phyllis P.*, 182 Ill. 2d 400, 401-02, 695 N.E.2d 851, 852 (1998), citing 405 ILCS 5/2—101 (West 1996).

■ We may reject at the outset the State's arguments regarding the inadequacy of a voluntary admission as a substitute for an involuntary admission. The procedures sanctioned by our Mental Health Code are adequate to address the State's concern that a voluntarily admitted patient can seek a discharge when it is not in the patient's best interest. If a respondent requests a voluntary admission while a petition for an involuntary admission is pending, the court may dismiss the petition and allow the respondent to be admitted voluntarily. However, prior to dismissing the petition the court may first determine whether this is in the best interests of the patient or the public. 405 ILCS 5/3—801 (West 2006). Once a patient is voluntarily admitted, he may file a request for a discharge at any time. 405 ILCS 5/3—403 (West 2006). However, if the State believes that the respondent is still in need of treatment in a facility, it may file a peti-

tion for an involuntary admission. That petition must be filed within five days after the respondent requests a discharge. 405 ILCS 5/3—403 (West 2006). Thus, as long as the State can meet its evidentiary burden of proving that the respondent is subject to an involuntary commitment, a voluntarily admitted patient who seeks a discharge will not automatically be discharged.

More importantly, this court cannot sanction circumventing the procedural safeguards in our Mental Health Code simply because the State asserts that an involuntary admission is "nearly always" in the patient's best interests. Psychiatric care is very often in the best interests of a patient like Michael, and we have no doubt that people who provide that care to patients like him nearly always have the patients' best interests at heart. However, as this court has previously cautioned, "the system can be, and has been, abused, and mistakes have no doubt been made." *In re John R.*, 339 Ill. App. 3d at 785, 792 N.E.2d at 356.

We may also easily reject the State's arguments concerning Michael's presumed fitness to waive the entire hearing. It is true, as the State points out, that respondents in mental health proceedings are presumed fit to make decisions about their legal rights. 405 ILCS 5/2—101 (West 2006). This presumption means that a court cannot assume that a respondent *is* unable to make informed decisions about whether to appear at the hearing or which attorney, if any, will represent him. That is to say, the court may not override the decisions of a respondent simply because he is alleged to be mentally ill. See *In re Barbara H.*, 183 Ill. 2d at 495-96, 702 N.E.2d at 561; *In re Dennis D.*, 303 Ill. App. 3d 442, 450, 707 N.E.2d 667, 672 (1999). It does not mean, however, that a court can allow a respondent to waive important rights without any inquiry into his capacity to do so and without any inquiry into his understanding of the ramifications of the rights he is giving up. See *In re Barbara H.*, 183 Ill. 2d at 496, 702 N.E.2d at 561; *In re Tiffin*, 269 Ill. App. 3d 581, 586, 646 N.E.2d 285, 287 (1995), citing *In re Click*, 196 Ill. App. 3d 413, 423, 554 N.E.2d 494, 500 (1990).

Here, the court was aware that the respondent had an appointed guardian, which necessarily means that a court had determined he was unable to manage his financial and personal affairs. The record shows that in addition to suffering from mental illness, Michael had only an eighth-grade education. He had been before the same court on prior petitions for involuntary admission and continued involuntary admission. As the State points out, he had also been found fit to stand trial in Lake County, which necessarily means, at least, that a finding was made (more than two years before the proceedings at issue took place) that he had the capacity to understand the nature of the

criminal proceedings against him. The court, aware of this history, allowed Michael to waive his right to *all* the applicable procedural safeguards, with only a cursory inquiry into his understanding of what he was giving up by doing so. Michael indicated that he understood that he would be admitted to Chester for an additional six months. He did not indicate—and was not asked—whether he understood that he had other options. Did he understand that the State had to meet a high burden of proof if he went forward with the hearing? Was he aware that he had the option of requesting a voluntary admission and seeking to dismiss the petition? The court did not ask these questions and the record provides no answers. Thus, even assuming that a complete waiver of the entire adversarial process is possible (an issue we will address next), the inquiry into Michael's capacity to make that waiver was woefully inadequate.

We now turn our attention to the question of whether a respondent can agree to an order for an involuntary commitment. Both parties cite prior decisions of this court in support of their positions. Michael H. cites *In re Mark W.*, 348 Ill. App. 3d 1065, 811 N.E.2d 767 (2004), while the State cites *In re Tammy D.*, 339 Ill. App. 3d 419, 790 N.E.2d 410 (2003). We find neither of these cases dispositive.

In *In re Mark W.*, the respondent did not want to testify at a hearing to determine whether he was subject to the involuntary administration of psychotropic medication. Because this made it difficult to counter the State's evidence, his attorney stipulated that the State's witnesses would testify that Mark W. met all the statutory requirements for the involuntary administration of psychotropic medication. *In re Mark W.*, 348 Ill. App. 3d at 1075, 811 N.E.2d at 775. The attorney stated, " 'We don't necessarily agree with all of that evidence, but we stipulate that it will be presented, and we have nothing to controvert it.' " *In re Mark W.*, 348 Ill. App. 3d at 1075, 811 N.E.2d at 775.

Instead of attempting to refute the State's evidence, the respondent's attorney argued that the statute authorizing the involuntary administration of psychotropic medication was unconstitutional as applied to a pretrial detainee such as Mark W., an argument ultimately rejected by both the trial court and this court. *In re Mark W.*, 348 Ill. App. 3d at 1068, 811 N.E.2d at 769. We reversed the trial court's order authorizing the involuntary administration of psychotropic medication to the respondent, finding that although ordinarily stipulations are "to be encouraged," the stipulation at issue was too general and incomplete to support a finding that the respondent was subject to the involuntary administration of psychotropic medication by clear and convincing evidence. *In re Mark W.*, 348 Ill. App. 3d at 1076, 811 N.E.2d at 775.

We note that, in one sense, the instant case provides a stronger case for a reversal than *In re Mark W.* did. There, at least the attorney made a legal argument that the statute authorizing the involuntary administration of psychotropic medication was unconstitutional as applied. Here, the respondent waived *any* arguments in his favor. However, our holding in *In re Mark W.* focused largely on the lack of specificity in the stipulations. Implicit in that discussion was the recognition that Mark W. did *not* waive the requirement that the State prove its allegations by clear and convincing evidence. We held that the stipulations in that case were insufficient to meet this requirement, and we did not consider whether the requirement could be met by more detailed stipulations. Thus, the case does not really address the question of whether a respondent can effectively waive the right to have a court even make that finding before entering an order.

The State contends that *In re Tammy D.* is directly on point. There, the respondent had been admitted to a mental health facility voluntarily. Six days later, she requested a discharge. The State filed a petition for involuntary admission the next day. *In re Tammy D.*, 339 Ill. App. 3d at 420, 790 N.E.2d at 412. The court granted the respondent's motion to dismiss that petition because the hearing was not held within the time mandated by statute. However, Tammy requested another voluntary admission. *In re Tammy D.*, 339 Ill. App. 3d at 421, 790 N.E.2d at 412. One month later, while Tammy was still a voluntarily admitted patient, the State filed a petition for outpatient treatment after Tammy's treatment team decided that she no longer needed to be hospitalized. *In re Tammy D.*, 339 Ill. App. 3d at 421, 790 N.E.2d at 412. Tammy initially opposed the petition, arguing that there was no statutory provision authorizing the court to enter an order for outpatient treatment of a voluntary admittee. *In re Tammy D.*, 339 Ill. App. 3d at 421, 790 N.E.2d at 412. However, she changed her mind and agreed to an order for outpatient treatment. *In re Tammy D.*, 339 Ill. App. 3d at 421, 790 N.E.2d at 413. Three weeks later, she filed a motion to vacate the order entered pursuant to her agreement. She argued that, although she was willing to undergo outpatient treatment, there was no statutory authority for requiring her to do so and she did not want to be bound by an order. *In re Tammy D.*, 339 Ill. App. 3d at 422, 790 N.E.2d at 413. The trial court denied the motion. In upholding this ruling, this court emphasized that mental health proceedings are civil proceedings, and we noted that our public policy favors the settlement of civil cases. *In re Tammy D.*, 339 Ill. App. 3d at 423, 790 N.E.2d at 414.

We find *In re Tammy D.* distinguishable from the instant case for two important reasons. First, that case involved an order for

outpatient treatment, something that is far less restrictive than the involuntary admission at issue here. This court found it highly relevant there that Tammy had agreed to something less restrictive than what the State could have sought as an alternative. *In re Tammy D.*, 339 Ill. App. 3d at 424, 790 N.E.2d at 414 (explaining that the agreed order could be considered a settlement of a civil case because the State could have filed a petition for involuntary admission had she not agreed to the outpatient order). The notion that a respondent can "settle" a mental health petition made sense in that context in a way it does not make sense here. Second, there was evidence that the respondent there had, in fact, *agreed* to the terms of the order she challenged on appeal. Here, although the State characterizes the order as an "agreed order," there is nothing in the record to suggest that Michael H. agreed to anything. As we previously discussed, he might well have believed that a hearing would have been futile, or like Mark W., he simply might not have wanted to participate in the proceedings.

Moreover, the result this court reached in *In re Tammy D.* would have been altered by a subsequent amendment to the Mental Health Code. In 2006, our legislature added section 3—801.5 to the Mental Health Code, which specifically addresses agreed orders for outpatient care such as the one at issue in *In re Tammy D.* 405 ILCS 5/3—801.5 (West 2006) (added by Pub. Act 94—521, §5 (eff. January 1, 2006)). The new statute governs orders for alternative treatment or care and custody. 405 ILCS 5/3—801.5 (West 2006). The statute provides that even if the parties agree to such an order, the court must inquire into the respondent's understanding of the conditions of the order (405 ILCS 5/3—801.5(a)(2) (West 2006)) and determine whether the proposed treatment is in the best interest of the respondent (405 ILCS 5/3—801.5(a)(1) (West 2006)). Additional safeguards apply if the treatment is to include the administration of psychotropic medication. 405 ILCS 5/3—801.5(a)(5) (West 2006).

Most importantly, an agreed order for alternative care may *not* include a requirement that the respondent be admitted to a hospital. 405 ILCS 5/3—801.5(a)(4) (West 2006). There is one very narrow exception to this prohibition. If the agreed order provides for the care and custody of the respondent, the custodian may be given authority under the order to admit the respondent to a hospital if the custodian believes that the admission is necessary because the respondent does not comply with the provisions of the order (for example, if the respondent refuses to attend counseling sessions or take medication). However, if a respondent is admitted pursuant to such a provision, he must be treated as a voluntary admittee and immediately advised of his right to seek a discharge. 405 ILCS 5/3—801.5(b) (West 2006).

Further, such an order cannot be construed as a finding that the patient is subject to involuntary admission. 405 ILCS 5/3—801.5(d) (West 2006).

Had this statute been in place when this court decided *In re Tammy D.*, we would have reached a different result. For one thing, the order at issue in that case involved a requirement that Tammy take medication, which, although not relevant for our purposes, requires additional safeguards under the statute. More importantly, both this court and the trial court treated the agreed order like an agreement to settle any other type of civil case. Although the court conducted some inquiry into Tammy's understanding of the order, it did not independently determine whether the agreed order was in Tammy's best interest, as now required by statute. Our approval of that procedure is no longer tenable. Nevertheless, the new statute *does* provide support for the State's argument that parties can at least agree to certain types of mental health orders. As we have emphasized, however, an order for outpatient care is far less restrictive than an order for an involuntary admission. We are thus left to consider whether the Mental Health Code permits a court to order the involuntary admission of a respondent who waives his right to a hearing. We conclude it does not.

The Mental Health Code does not directly prohibit such an agreement, although, as previously mentioned, the statute authorizing agreed orders for outpatient care does expressly limit the reach of such orders to exclude an involuntary admission. The statute provides that an agreed order for outpatient care cannot be deemed to constitute a finding that a respondent is subject to involuntary commitment, and if the respondent is admitted pursuant to authority granted to a guardian under the order, that admission must be voluntary. See 405 ILCS 5/3—801.5(b), (d) (West 2006). Thus, an agreement to receive outpatient care cannot be used to circumvent the requirements of the Mental Health Code if the respondent violates the order and the State determines that, as a result, an involuntary admission is necessary.

Moreover, we believe that an "agreed order" for an involuntary admission would be inconsistent with the provisions of the Mental Health Code dealing with a voluntary admission. As we discussed previously, if a respondent voluntarily admits himself while a petition for involuntary admission is pending, the court may dismiss the petition for involuntary admission immediately or it may require proof that dismissing the petition is in the best interests of the respondent and the public. 405 ILCS 5/3—801 (West 2006). Obviously, if the court determines that a dismissal of the petition is not appropriate, the peti-

tion for involuntary dismissal remains pending and is subject to all the procedural safeguards ordinarily applicable. Further, the State is prohibited from telling a respondent that he might be subject to involuntary admission unless he agrees to be committed voluntarily. *In re Tiffin*, 269 Ill. App. 3d at 585, 646 N.E.2d at 287. These procedures make it clear that a respondent's agreement to receive inpatient treatment cannot be used as an end-run around the requirements imposed where a respondent is alleged to be subject to involuntary admission.

■ Allowing a respondent to be found subject to involuntary admission under the circumstances presented here flies in the face of this entire statutory scheme. We thus conclude that a respondent cannot effectively waive the entire hearing on a petition for involuntary admission. If the respondent agrees to be admitted, he must be admitted on a voluntary basis. We acknowledge that the decision we reach today is at odds with the decision reached by a panel of this court in the unpublished order the State sought to cite. As previously noted, an unpublished order has no precedential value. Upon further reflection, we believe that the conclusion we reach today is the correct one. In light of this conclusion, we need not consider the respondent's additional arguments.

For the reasons stated, we reverse the order of the trial court finding Michael H. to be subject to involuntary admission.

Motion denied; judgment reversed.

WEXSTTEN, P.J., and STEWART, J., concur.