# Illinois Official Reports

## Appellate Court

*In re Commitment of Chester*, 2017 IL App (1st) 160979

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF EARL CHESTER (The People of the State of Illinois, Petitioner-Appellee, v. Earl Chester, Respondent-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-16-0979 |
| Filed | September 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-80008; the Hon. Thomas J. Bryne, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen F. Potts, of Des Plaines Law Group PC, of Des Plaines, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Matthew P. Becker, Assistant Attorneys General, of counsel), for the People. |
| Panel | PRESIDING JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Justices Fitzgerald Smith and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a stipulated adjudication as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2006)), respondent, Earl Chester, appeals from the circuit court's denial of his motion to withdraw his stipulation and its order committing him to the Illinois Department of Human Services (IDHS) for institutional treatment. He contends that the trial court erred in accepting his stipulation because (1) the Act does not provide for stipulations and (2) the court failed to conduct a fitness hearing prior to accepting the stipulation. We affirm.

¶ 2                                                    BACKGROUND

¶ 3    On August 16, 2007, the State filed a petition to commit respondent as a sexually violent person under the Act. In its petition, the State alleged that respondent (1) was found guilty of sexual assault in the circuit court of Cook County and sentenced to 22 years in the Department of Corrections, (2) had been diagnosed with paraphilia, not otherwise specified, non-consenting persons (PNOS), a mental disorder which predisposes respondent to commit acts of sexual violence, and (3) was dangerous because his mental disorder created a substantial probability that he would engage in acts of sexual violence in the future.

¶ 4    In support of its petition, the State included the report of a psychological evaluation of respondent conducted by Dr. Ray Quackenbush, Psy.D. Prior to the evaluation, the doctor informed respondent of the nature and structure of the proceedings under the Act. In his report, Dr. Quackenbush indicated that respondent articulated his understanding of the information and consented to the interview. As part of the evaluation, Dr. Quackenbush interviewed respondent, reviewed his arrest and conviction history, and examined respondent's prison disciplinary and medical files. Several assessment methods were used to determine respondent's level of risk for committing future sexually violent offenses. Respondent was diagnosed with (1) PNOS, (2) polysubstance dependence, and (3) antisocial personality disorder. Based on the evaluation, Dr. Quackenbush concluded that respondent showed a substantial and continuing risk for sexual offense recidivism and his actions met the criteria for PNOS. As such, he recommended that respondent be found to be a sexually violent person under the Act and subject to civil commitment for clinical intervention to prevent respondent from engaging in future acts of sexual violence. On September 11, 2007, the court found probable cause to believe that respondent was a sexually violent person and, pursuant to section 30(c) of the Act (725 ILCS 207/30(c) (West 2006)), ordered respondent to participate in an evaluation to determine whether he was a sexually violent person. On that same date, both respondent and the State filed a demand for a jury trial.

¶ 5    On January 9, 2008, upon respondent's request, the court ordered Dr. Eric Ostrov to conduct any and all examinations of respondent in preparation of his defense in the commitment proceeding.[1] The matter was continued by agreement of the parties over the course of the next several years. On July 13, 2010, the court granted the State's motion for a current sexually violent person evaluation of respondent. Because Dr. Quackenbush was no longer available, the State requested that the Department of Corrections be directed to assign an evaluator to perform a current evaluation of respondent. Although the State asserts that Dr.

_____

[1]The record does not disclose Dr. Ostrov's medical field of practice.

John Arroyo submitted evaluation reports concerning respondent on December 2010, September 25, 2013, and November 25, 2013, and that Dr. Kimberly Weitl submitted reports on October 26, 2007, February 15, 2010, June 18, 2013, and October 31, 2013, those reports do not appear in the record.

¶ 6       Trial in this matter commenced and the jury was sworn in on March 9, 2015. On March 10, 2015, prior to proceeding with trial, the parties tendered a stipulation in which they agreed that respondent was waiving his right to a jury trial, the State's evaluators would opine that respondent had been convicted of a sexually violent offense, respondent suffers from mental disorders and is substantially probable to reoffend, and, thus, based on the stipulation, the court would find respondent to be sexually violent person. In presenting the stipulation, defense counsel indicated that he had reviewed each paragraph with respondent and answered any questions respondent had regarding the agreement. Before accepting the stipulation, the following colloquy occurred:

"THE COURT: *** Did you review this document with your lawyer?

[RESPONDENT]: Yes, I did.

THE COURT: Did you review each and every one of these 16 paragraphs with your lawyer regarding the stipulation that you're asking to enter at this time?

[RESPONDENT]: Yes.

THE COURT: I'm showing you page three of the stipulation and agreement. Is that your signature on this stipulation?

[RESPONDENT]: Yes, it is.

THE COURT: And is it your intention at this time to waive or give up your right to a jury trial in this matter?

[RESPONDENT]: Yes.

THE COURT: And proceed by way of stipulation where you're admitting that at this time you're currently a sexually violent person under the statute; is that correct?

[RESPONDENT]: Yes.

THE COURT: Do you understand that you do have a right to a trial in this matter, either a right to a trial before a jury or a judge? Do you understand that?

[RESPONDENT]: Yes.

THE COURT: Now, if you're stipulating as laid out in the written stipulation and agreement, you're giving up the right that you have to a jury trial. Do you understand that?

[RESPONDENT]: Yes.

THE COURT: You're also giving up the right you have to a trial before a judge. Do you understand that?

[RESPONDENT]: What you're saying I can't have a jury trial no more.

THE COURT: Well, you could have if you decided to, but the agreement that you're entering into says you would give up your right to the jury trial.

[RESPONDENT]: Yes.

THE COURT: And you would agree to the allegations in the petition, that you're a sexually violent person. Is that what you would like to do?

[RESPONDENT]: Yeah, yeah.

THE COURT: All right."

The trial court accepted the stipulation, adjudicated respondent as a sexually violent person, and remanded him to the custody of IDHS.

¶ 7 On March 31, 2015, respondent filed a *pro se* motion to vacate the stipulation. In his motion, respondent argued that, despite having agreed to the stipulation and asserting on the record that he understood the rights he would have been relinquishing, he had changed his mind. In response, the State argued that respondent failed to allege good cause as to why the stipulation should not be binding. Defense counsel did not supplement the respondent's *pro se* motion. However, at the hearing on the motion, defense counsel argued that it was in the interest of justice, based on respondent's "mental illness," that the court allow respondent to withdraw the stipulation. Defense counsel acknowledged that he thoroughly reviewed the stipulation with respondent, that the provisions in the stipulation were true, and that the court properly admonished the respondent. He noted that on the day of trial, respondent approached him concerning the stipulation. Respondent had never been through jury selection before; he was tired, wanted it to be over with, and did not want to face the witnesses.

¶ 8 The trial court denied the motion. In so doing, the court commented that,

"I don't think his mental illness or any other disability that he may be suffering impacted his understanding of the nature of the stipulation or the consequences thereof at the time. There is no reason based in law or the facts surrounding the actual stipulation that would warrant the [c]ourt to allow the respondent to withdraw the stipulation or to set aside the stipulation at this time."

On January 28, 2016, following a dispositional hearing, respondent was committed to institutional care for treatment. Respondent appeals.

¶ 9                                      ANALYSIS

¶ 10 Respondent argues that the trial court erred when it denied his motion to vacate his stipulation as a sexually violent person and committed him to IDHS. Specifically, respondent contends that the trial court erred when it initially accepted a stipulation that respondent was a sexually violent person because (1) the Act does not provide any procedure or mechanism to stipulate as a sexually violent person and (2) the court failed to make any preliminary inquiry into his mental capacity to either understand or comprehend the stipulation.

¶ 11 Respondent's claim regarding the propriety of accepting a stipulation in civil commitment proceedings under the Act involves statutory construction and presents a pure legal question subject to *de novo* review. *In re Detention of Hardin*, 238 Ill. 2d 33, 40 (2010). When construing a statute, our goal is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. *Id.* Because all provisions of a statutory enactment are viewed as a whole, words and phrases should not be construed in isolation but should be interpreted considering other relevant provisions of the statute. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). As such, each word, clause, and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous. *Id.* Thus, this court will not depart from the statute's plain language by reading in exceptions, limitations, or conditions in conflict with the legislature's intent. *Hardin*, 238 Ill. 2d at 40. With these principles in mind, we turn to respondent's claims.

- 4 -

¶ 12                    Permissibility of Stipulations

¶ 13        Respondent argues that the trial court erred in accepting the stipulation because the Act does not provide a procedure or mechanism for respondent to stipulate as a sexually violent person. In response, the State first argues that respondent has waived this issue by failing to develop his arguments on appeal. Alternatively, the State argues that respondent's statutory argument is meritless because, as a civil proceeding, stipulations are permissible and binding unless proved to be unreasonable.

¶ 14        As a preliminary matter, we address the State's waiver argument. Specifically, the State argues that respondent did not explain how his stipulation violated the traditional rules governing stipulations but rather focuses his argument on the impermissibility of stipulations under the Act. Thus, the State urges forfeiture. We would agree that respondent's argument is not grounded in those principles that might ordinarily accompany an argument in support of vacating a stipulation. Nevertheless, respondent's major contention presented in the trial court, and also here on appeal, remains unaltered: his stipulation should be vacated. Thus, we decline to find the issue waived and turn our attention to the substantive issue presented in this appeal.

¶ 15        Under the Act, a sexually violent person may be committed to the custody of IDHS for control, care, and treatment until the person is no longer a sexually violent person. 725 ILCS 207/40(a) (West 2006). A sexually violent person is "a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2006).

¶ 16        Proceedings under the Act are civil rather than criminal in nature. *In re Detention of Samuelson*, 189 Ill. 2d 548, 553 (2000). To initiate proceedings under the Act, the State's Attorney or Attorney General must file a petition with the circuit court to have the respondent committed as a sexually violent person. 725 ILCS 207/15 (West 2006); *Samuelson*, 189 Ill. 2d at 553. Once the petition is filed, the court must hold a hearing to determine whether there is probable cause to believe that the person named in the petition is a sexually violent person. 725 ILCS 207/30(b) (West 2006). If probable cause is not established, the petition must be dismissed. 725 ILCS 207/30(c) (West 2006). At trial, the petitioner has the burden of proving the allegations in the petition beyond a reasonable doubt. 725 ILCS 207/35(d)(1) (West 2006). If a court or a jury determines that a person is a sexually violent person, the court shall order the person to be committed to the custody of IDHS. 725 ILCS 207/40(a) (West 2006). After a person has been committed to institutional care, IDHS is to conduct an examination of his mental condition within six months of the initial commitment and again at least once every 12 months. 725 ILCS 207/55(a) (West 2006). The Act also provides that "[t]he provisions of the Civil Practice Law *** shall apply to all proceedings hereunder except as otherwise provided." 725 ILCS 207/20 (West 2006). The Act is silent with respect to the permissibility of stipulations at any phase of the civil commitment process.

¶ 17        Although the Act does not expressly provide for stipulations, we note that courts favor stipulations because they tend to promote disposition of cases, simplification of issues, and the saving of expense to litigants. *People v. Woods*, 214 Ill. 2d 455, 468 (2005). A stipulation is conclusive as to all matters necessarily included in it and no proof of stipulated facts is necessary since the stipulation is substituted for proof and dispenses with the need for evidence. *Id.* at 469 A court may reject an otherwise valid stipulation only if it is fraudulent,

unreasonable, or in violation of public policy. *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1163 (2007). However, parties will not be relieved from a stipulation in the absence of a clear showing that the matter stipulated is untrue and then only when the application is seasonably made. *Brink v. Industrial Comm'n*, 368 Ill. 607, 609 (1938). Therefore, a trial court's decision to accept a stipulation will not be disturbed absent a manifest abuse of discretion. *Tantiwongse*, 371 Ill. App. 3d at 1163.

¶ 18    Respondent has not cited to any case which would support his argument here on appeal. He instead urges us to consider procedures found to be impermissible under the Mental Health and Development Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2006)) when deciding whether stipulations are permissible under the Act. He concedes that the Act makes no reference to the Code. Nevertheless, relying on *In re Michael H.*, 392 Ill. App. 3d 965 (2009), he maintains that the policy and legal reasons for not allowing mental health patients to stipulate under the Code to involuntary commitments apply equally to commitments under the Act. Citing *Samuelson*, 189 Ill. 2d at 563, he maintains that "individuals subject to the Act comprise a very specific type of mental disease causing specific types of behavior from the mental illness."[2]

¶ 19    *Michael H.* involved the involuntary admission of an individual pursuant certain provisions under the Code. 392 Ill. App. 3d 965. In that case, the State, as petitioner, filed a petition for involuntary admission, alleging that Michael was a person subject to involuntary admission pursuant to section 3-813(b) of the Code (405 ILCS 5/3-813(b) (West 2006)). *Michael H.*, 392 Ill. App. 3d at 967. The petition alleged that, due to mental illness, Michael was a danger to himself or others and was unable to provide for his basic physical needs or protect himself from harm without help. *Id.* The court convened for a hearing on the petition. *Id.* at 968. At the hearing, Michael's attorney informed the court that Michael would give up his right to the scheduled hearing. *Id.* After inquiring of Michael whether he had heard the comments made by his attorney, the court indicated that Michael had no objection to the court signing the order of commitment and entered an order finding him subject to continued involuntary admission. *Id.* On appeal, the Fifth District Appellate Court reversed, holding that a respondent subject to proceeding under the Code could not effectively waive the entire hearing on a petition for involuntary admission. *Id.* at 979.

¶ 20    Although respondent here characterizes his condition as a "mental illness," nothing in the record supports such a conclusion. Respondent's sexual misconduct is consistently characterized in Dr. Quackenbush's report and in the State's petition as a "mental disorder" and not as "mental illness." The distinction, we believe, is an important one. The Code defines mental illness as "a mental, or emotional disorder that substantially impairs a person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life, but does not include *** an abnormality manifested only by repeated criminal or otherwise antisocial conduct." 405 ILCS 5/1-129 (West 2006). Consistent with Dr. Quackenbush's diagnosis of respondent, "mental disorder" under the Act is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2006). We find

---

[2]Respondent misperceives language in *Samuelson*, which clearly distinguishes between "mental illness" under the Code and "mental disorder" under the Act. 189 Ill. 2d at 563, 568.

significant that antisocial conduct, which is included as a part of Dr. Quackenbush's diagnosis of respondent, is expressly excluded from the definition of mental illness.

¶ 21 Clearly, the legislature deemed it appropriate to distinguish between "mental illness" and "mental disorders" and to define criminal sexual misconduct as something other than a mental illness. It has not escaped our notice that, unlike the proceedings for involuntary admission of the mentally ill, proceedings for the civil commitment of sexually violent persons are included in the "Criminal Procedure" chapter of the Illinois Compiled Statutes. 725 ILCS 207/1 *et seq.* (West 2006). As the court in *Samuelson* noted, "persons subject to the Sexually Dangerous Persons Act [(725 ILCS 205/0.01 *et seq.* (West 1998))] possess characteristics which set them apart from the greater class of persons who fall within the Mental Health Code, and such persons present different societal problems."[3] *Samuelson*, 189 Ill. 2d at 563. Mental illness is not a crime. *In re Stephenson*, 67 Ill. 2d 544, 556 (1977). Sexual violence committed by individuals with mental disorders, however, is. 725 ILCS 207/1 *et seq.* (West 2006).

¶ 22 In light of the above, we decline to extend the holding of *In re Michael H.* to the facts of this case. Neither do we express any opinion on its holding. Suffice it to say that we reject out of hand respondent's entreaty to consider the Code in determining the propriety of stipulations in the context of the Act.

¶ 23 The availability of stipulations under the Act, however, was considered by the appellate court in our neighboring Second District. In *In re Commitment of Walker*, 2014 IL App (2d) 130372, the parties entered a stipulation that provided, *inter alia*, that the respondent was a sexually violent person. *Id.* ¶ 5. Following the trial court's acceptance of the stipulation, the respondent filed a motion to withdraw it, alleging that his decision to enter into the agreement was based on reports by the evaluating psychologists and that there were several problems with the bases for their opinion. *Id.* ¶ 6. The respondent's motion to withdraw was denied. *Id.*

¶ 24 On appeal, the respondent argued that, because stipulations were not authorized by the Act, the trial court should not have accepted his. *Id.* ¶ 34. The respondent cited to no authority which would bar the use of stipulations in civil commitment proceedings. *Id.* ¶ 36. Noting that stipulations are generally favored and would be enforced unless unreasonable, procured by fraud, or violative of public policy, the court rejected respondent's argument as "wholly unpersuasive." *Id.* ¶¶ 36-38.

¶ 25 Respondent urges our rejection of *Walker* as dispositive because the court there failed to consider either the mental health nature of the proceedings or the similarities between the Act and the Code. As we have previously noted, as did the court in *Walker*, that respondent here has cited to no case which would prohibit the use of stipulations under the Act. That said, in light of our discussion above, we agree with the holding in *Walker*. We find no basis either in the plain language in the Act or in case law that would prohibit a respondent, subject to civil commitment under the Act, to knowingly enter into a stipulation that he or she is a sexually violent person.

¶ 26                                    Capacity to Stipulate
¶ 27 Respondent next contends that the trial court erred when it did not inquire into his capacity to stipulate. Specifically, he argues that the trial court erred when it did not make any inquiry

_____

[3]In *Samuelson*, 189 Ill. 2d at 563, the court found comparable characteristics of individuals subject to the Act and those subject to the Sexually Dangerous Persons Act (725 ILCS 205/0.01 (West 1998)).

into the manner in which his "mental illness" impacted his ability to comprehend the stipulation. In response, the State argues that respondent has forfeited this argument on appeal because he did not raise the argument in the trial court. Alternatively, the State argues that respondent does not have a statutory right to a fitness hearing in a sexually violent person commitment proceeding. Further the State contends that it would be improper for this court to apply a specific requirement not expressly provided for in the Act.

¶ 28    Again, respondent was not diagnosed with a mental illness, and nothing in the evaluation reports, nor in respondent's responses to the court's admonishments, suggested a lack of capacity such that the need for a fitness hearing might be implicated.[4] In any case, it is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). As respondent failed to raise the argument of his right to a fitness hearing before the trial court, the issue is forfeited.

¶ 29                                          CONCLUSION
¶ 30    We find no impropriety in the trial court's acceptance of the respondent's stipulation. Further, we find no basis in the record upon which to relieve respondent from his stipulation. Thus, we hold that the trial court did not err in denying respondent's motion to vacate. Accordingly the judgment of the circuit court of Cook County is affirmed.

¶ 31    Affirmed.

---

[4]In *In re Commitment of Weekly*, 2011 IL App (1st) 102276, this court held that a respondent subject to civil commitment under the Act has neither a statutory nor due process right to a fitness evaluation.