NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210366-U

NO. 4-21-0366

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* DETENTION OF GREGORY MORRIS | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cass County |
| Petitioner-Appellee, | ) | No. 98MR17 |
| v. | ) | |
| Gregory Morris, | ) | Honorable |
| Respondent-Appellant). | ) | Timothy J. Wessel, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's denial of respondent's motions for
the appointment of (1) an independent evaluator and (2) an independent
polygrapher.

¶ 2        In 1999, a jury adjudicated respondent, Gregory Morris, a sexually violent person

(SVP), as defined by section 5(f) of the Sexually Violent Persons Commitment Act (Act) (725

ILCS 207/5(f) (West 1998)). Following the verdict, the trial court committed respondent to the

custody of the Illinois Department of Human Services (DHS) until such time as he was no longer

sexually violent. Thereafter, respondent was annually reexamined by an evaluator as required by

the Act. See *id.* § 55.

¶ 3        In May 2016, respondent *pro se* filed a motion requesting the appointment of an

independent polygrapher to review data associated with respondent's failed polygraph

examination. In January 2021, respondent, through counsel, filed a motion requesting the appointment of a qualified expert to perform an independent examination of respondent, pursuant to section 55(a) of the Act (725 ILCS 207/55(a) (West 2020)). The trial court denied both motions.

¶ 4         Respondent appeals, arguing that the trial court erred by denying his motions for the appointment of an (1) independent evaluator and (2) independent polygrapher. Respondent also raised various challenges to the constitutionality of the Act. We disagree and affirm.

¶ 5                              I. BACKGROUND

¶ 6                          A. The Procedural History

¶ 7         In 1987, respondent pleaded guilty to aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-14) of two women in two separate incidents and was sentenced to six years in prison for each offense, with the sentences to run concurrently. In 1994, he again pleaded guilty to two counts of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1992)), and the trial court sentenced him to six years in prison for each offense, with the sentences to run concurrently.

¶ 8         In 1999, a jury adjudicated respondent an SVP as defined by section 5(f) of the Act (725 ILCS 207/5(f) (West 1998)). Following that verdict, the trial court committed respondent to the care, custody, and control of DHS until such time as he was no longer sexually violent. Respondent appealed, and this court affirmed. *In re Detention of Morris*, No. 4-99-0454 (Nov. 13, 2000) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9         Thereafter, respondent became subject to reexamination every 12 months by an examiner. See 725 ILCS 207/55 (West 1998). In 2002, in an effort to enter a mandatory treatment program, respondent agreed to submit to a polygraph examination to "investigate his

truthfulness regarding whether or not he sexually assaulted [the victim in his 1994 conviction, L.P.]" The polygraph examiner determined that the test was inconclusive on that issue because respondent tried to control his breathing. That same year, respondent moved for the appointment of an independent polygrapher, arguing that DHS would not allow him to progress in treatment unless he either (1) admitted the offense against L.P. or (2) passed a polygraph exam. The trial court denied the motion, and this court affirmed, holding that the trial court did not have the authority to appoint a polygrapher. *In re Detention of Morris*, No. 4-02-0893 (Sept. 20, 2003) (unpublished order under Illinois Supreme Court Rule 23) (*Morris II*). A second polygraph exam was conducted in 2005. This time, the examiner concluded that respondent was not truthful when he claimed he had consensual sex with L.P.

¶ 10        In 2016, respondent submitted to a penile plethysmograph (PPG) evaluation to assess deviant and nondeviant sexual arousal related to "rape stimuli." According to the evaluator, "[respondent] did not demonstrate significant levels of arousal to any of the 12 scenarios presented: healthy or deviant."

¶ 11        Following respondent's annual reevaluation in 2016, respondent moved for and was appointed an independent evaluator pursuant to section 55(a) of the Act (725 ILCS 207/55(a) (West 2014)). He also moved for an independent polygrapher to verify the results of the 2005 polygraph exam because, he argued, it was "the SVP[ ] program's protocol to 'fail' any detainee who submits to the polygraph while denying guilt." In 2017, appointed counsel supplemented that motion, which remained pending until June 2021.

¶ 12        In 2018, respondent petitioned for discharge pursuant to section 65(b)(1) of the Act (725 ILCS 207/65(b)(1) (West 2018)), claiming he was no longer an SVP. However, following a trial, the jury found beyond a reasonable doubt that he remained an SVP, and this

court affirmed. *In re Detention of Morris*, 2021 IL App (4th) 190750-U, ¶ 88 (*Morris III*).

¶ 13                              B. The 2019 and 2020 Reevaluations

¶ 14          In 2019 and 2020, Dr. Deborah Nicolai, Psy.D., conducted respondent's reevaluations. In both evaluations she concluded that respondent remained an SVP. After each reevaluation and based upon Nicolai's findings, the State moved for findings of no probable cause to believe that respondent was no longer an SVP. The trial court conducted these probable cause hearings together in 2021 because of the COVID-19 pandemic.

¶ 15          In respondent's reevaluations, which were introduced as evidence at the probable cause hearing, Nicolai opined that respondent remained an SVP and suffered from sexual sadism disorder in a controlled environment and narcissistic personality disorder with antisocial features. In reaching her opinion, Nicolai considered (1) interviews she conducted with respondent, (2) respondent's treatment records, which included the polygraph examinations, (3) reports from women who had dated respondent, (4) respondent's criminal and sexual history, including the three sexually violent offenses for which he was convicted—namely, one in 1987 in which he drove a woman to a cabin in the woods and slammed her head on the floor until he could rape her; another in which he bound a woman's hands, beat her, and raped her in a car on the side of the road; and the last, in 1994 in which he grabbed a woman, L.P., by the arm, forced her into the bedroom, tore her hair out, and then raped her vaginally, anally, and orally—and (5) an uncharged sexual offense, which was investigated in 1997, involving the disappearance of a 17-year-old girl who two years later reported to an investigator that respondent tied her up and raped her for six days.

¶ 16          In the 2020 reevaluation, Nicolai opined that respondent was substantially probable to engage in acts of sexual violence based on an adjusted risk assessment, in which she

considered the respondent's scores on actuarial instruments—namely, the Static-99R and Static-2002R—and the effect of dynamic and protective risk factors. She also found that respondent "has numerous risk factors which are external to the actuarial instruments used in this re-examination but are empirically demonstrated to be associated with increased risk for sexual recidivism."

¶ 17  Regarding age, Nicolai did not find respondent's age to be a protective factor because (1) research showed that any decreased risk with advanced age becomes significant only at age 60 and older and (2) respondent was 57 years old. Additionally, Nicolai pointed out that one study found that "the effect of age at release depended on offense history."

¶ 18  Nicolai noted in the report that at one point during a previous interview, respondent stated, "I am not a sadist. I do not have a mental disorder." He explained that one of the offenses happened after he had been "looking for a prostitute," but when he realized the victim was not a prostitute, he decided "[he] was going to [have nonconsensual sex with her] anyway." Respondent added that "[i]t would have been more arousing if she consented."

¶ 19  In the 2019 interview, Nicolai reported that respondent "did not feel there were any personal changes he needed to make." During the 2020 interview, when discussing treatment progress, respondent was "sarcastic, uncooperative, answering questions with questions," causing Nicolai to end the interview after only 20 minutes.

¶ 20  Nicolai concluded the report by stating the following.

> "During this review period, [respondent] remained in Phase II of the five-phase treatment program ***. He was removed from Power to Change in part due to his failure to recognize any treatment barriers or need for personal change. He attended ancillary groups and remained on treatment status ***. His overall

treatment approach will not serve to lower his risk of sexual offense recidivism. He continues to possess many outstanding treatment needs. He has not yet begun to address his offense cycle nor has he obtained any interventions skills. He repeatedly denied any reason to make any attempt at personal change. [Respondent] *has not* made sufficient progress in treatment to be recommended for Conditional Release." (Emphasis in original.)

¶ 21 In January 2021, respondent moved for the appointment of an independent evaluator, arguing that (1) Nicolai was not independent and (2) respondent was "virtually incapable of rebutting" her report without an expert.

¶ 22                                C. The Probable Cause Hearing

¶ 23 In June 2021, the trial court conducted a probable cause hearing on the State's 2019 and 2020 motions for findings that there was no probable cause to believe that respondent was no longer an SVP. At that hearing the court also considered (1) respondent's motion, filed in 2016, for an independent polygrapher and (2) his motion for an independent evaluator.

¶ 24                                1. *Respondent's Argument*

¶ 25 At the probable cause hearing, respondent argued that the appointment of an independent polygrapher was needed to support respondent's claim of innocence because the 2002 polygraph was inconclusive and the 2005 polygraph showed that respondent was not being truthful. Respondent's counsel further stated, "[Respondent] plans to maintain his innocence in regards to that offense, but it certainly—it certainly impacts his treatment and his progress in groups and other areas at the facility. So that is the reason for the request for independent polygraph."

¶ 26 Regarding the motion for the appointment of an independent evaluator,

respondent argued that Nicolai did not properly consider respondent's age when calculating his risk to reoffend. Instead, Nicolai used his age at release, which was 33 when he was released from prison for his index offense. Accordingly, respondent argued, if his current age had been considered, his score on the evaluation would have been lower—correlating to a lower risk to reoffend. Respondent asserted that Nicolai's "report [was] biased, at least in terms of not accounting for his age." Respondent further argued that another expert was needed to conduct a new report because (1) "nobody can agree on [respondent's] history" and (2) Nicolai did not give appropriate credit in her report to the results of the PPG respondent had taken in 2016.

¶ 27　　　　　Following respondent's argument, the trial court asked respondent whether it was correct that (1) the 2002 polygraph was rendered inconclusive because respondent had attempted to control his breathing and (2) the 2005 polygrapher opined that respondent was not being truthful when he answered the formulated test questions. Respondent answered in the affirmative.

¶ 28　　　　　　　　　　　　　　2. *The State's Argument*

¶ 29　　　　　The State argued that an additional polygraph would not make any difference to the probable cause hearing and the trial court likely did not have authority under the Act to appoint an independent polygrapher. The State continued, "It is really a treatment matter, not really an evaluation matter[.]"

¶ 30　　　　　Regarding the appointment of an independent evaluator, the State argued that respondent "has not made any progress over the last two treatment periods we are looking at. He remains in phase 2, the disclosure phase, of the 5-phase treatment program. If anything, he has done worse this last period."

¶ 31　　　　　　　　　　　　　　3. *The Trial Court's Decision*

¶ 32	The trial court first addressed the respondent's motion for the independent polygrapher. The court stated that because it already had a conclusive test following an inconclusive test, it did not feel it was necessary to order a third test to confirm the second test. Further, the court expressed doubt that it had the power to order a third test. The court then stated the following.

> "Likewise, on the motion for independent expert ***. We are not close to starting to have a conversation about whether [respondent] should be released. ***.

> [Respondent's] counsel did make some interesting points, which I considered in this, about some inconsistencies about the age. I mean I do have questions. At times I understand on these Static-99R tests that it does say age of at [*sic*] release from index sex offense, and he is getting scored at his age which he would have been released from—I assume from the Illinois Department of Corrections. Now how his current age plays into that, I would think it plays something into it. ***.

> So these are the tests that they use. I know they are reliable tests ***. So as they score, I'm going to take their scoring into consideration, but I don't believe that is enough for a motion for an independent expert at this time."

¶ 33	Ultimately, the trial court denied both motions and found there was not probable cause that respondent was no longer an SVP.

¶ 34	This appeal followed.

¶ 35	                                II. ANALYSIS

¶ 36	Respondent appeals, arguing that the trial court erred by denying his motions for

the appointment of an (1) independent evaluator and (2) independent polygrapher. Respondent also raised various challenges to the constitutionality of the Act. We disagree and affirm.

¶ 37 A. The Applicable Law and the Standard of Review

¶ 38 Once a person has been committed as an SVP under the Act, DHS is required to reexamine the person annually to determine whether: "(1) the person has made sufficient progress in treatment to be conditionally released and (2) the person's condition has so changed since the most recent periodic reexamination *** that he or she is no longer a sexually violent person." 725 ILCS 207/55(a) (West 2020). The Act further provides that "[a]t the time of a reexamination under this Section, the person who has been committed may retain or, if he or she is indigent and so requests, the trial court may appoint a qualified expert or a professional person to examine him or her." *Id.*

¶ 39 Because the decision to appoint an independent expert under the Act is a matter that rests within the trial court's discretion, appellate courts review the matter for an abuse of discretion. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 33, 40 N.E.3d 1215. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000).

¶ 40 If the person neither filed a petition for discharge nor affirmatively waived the right to do so, the court conducts a "probable cause hearing consist[ing] only of a review of the reexamination reports and arguments on behalf of the parties" to determine if there is probable cause to believe that the committed person is no longer an SVP. 725 ILCS 207/65(b)(1) (West 2020).

¶ 41 B. This Case

¶ 42                          1. *The Motion for an Independent Evaluator*

¶ 43          Initially, we note that respondent does not dispute the trial court's ultimate determination at the probable cause hearing that there is not probable cause to believe respondent is no longer a sexually violent person. Defendant challenges only the trial court's denial of his motions for an independent evaluator and independent polygraph exam.

¶ 44          Regarding the independent evaluator, respondent argues that the trial court should have appointed an independent evaluator to rebut "the [S]tate evaluator's biased report." We disagree.

¶ 45          "While the Act allows for the appointment of an expert for an indigent person, it certainly does not require a court to take such action. [Citations.] A respondent may be entitled to funds to hire an expert witness where expert testimony is deemed crucial to a proper defense." (Internal quotation marks omitted.) *Kirst*, 2015 IL App (2d) 140532, ¶ 33. That testimony is crucial when, (1) without the expert testimony, respondent's case would be prejudiced or (2) the court would have found differently had an independent evaluator been provided. *People v. Botruff*, 212 Ill. 2d 166, 177, 817 N.E.2d 463, 469 (2004).

¶ 46          Here, respondent neither filed a petition for discharge nor affirmatively waived his right to do so. Accordingly, at the probable cause hearing, the trial court considered only Nicolai's report and the parties' arguments when determining whether probable cause existed to revoke respondent's SVP status. See 725 ILCS 207/65(b)(1) (West 2020).

¶ 47          At the probable cause hearing, respondent's argument boiled down to his wanting another expert to examine him simply for the possibility of obtaining a different result. Indeed, respondent conceded that an independent evaluator's "opinion may or may not be favorable." Respondent offered no evidence that the appointment of an independent evaluator would be

crucial to his defense. Instead, he merely argued that Nicolai's report was biased because it used respondent's age at release rather than his current age when calculating his risk to reoffend using the evaluation tools. He explained that if an older age was used, then the risk to reoffend would have been lower. However, respondent did not say whether a different evaluator would have used his current age rather than his age at release.

¶ 48    Respondent further argued that "nobody can agree on [respondent's] history," which, based on the context of his argument, related to his maintaining his innocence of committing aggravated criminal sexual assault in 1994, throughout his treatment. Respondent also argued that Nicolai did not give sufficient weight to respondent's performance on his 2016 PPG test. Again, however, respondent does not explain how a different evaluator would have helped his defense or what it even means to have respondent's "history cleared up." (We opine that respondent is likely tiptoeing around proclaiming his innocence at the probable cause hearing, which we further note, stems from convictions in which respondent pleaded guilty.)

¶ 49    On the other hand, the State pointed out and the trial court acknowledged that respondent had made minimal, if any, treatment progress and remained in phase two of the five-phase treatment program. Moreover, respondent was removed from the Power to Change Group due to his failure to recognize the existence of any treatment barriers or any need for personal change. Indeed, respondent clearly did not take his treatment seriously as evidenced by his refusing to cooperate and making sarcastic remarks to Nicolai during the 2020 clinical interview—namely, responding to direct questions with, for example, "You're the evaluator, you tell me," "Why does that matter, they aren't psychotropics," and "Does it matter what I say." Respondent also stated multiple times that the treatment process was "pointless."

¶ 50    This record shows that respondent provided no basis for the trial court to appoint

an independent evaluator, let alone establish that he would have been prejudiced without an independent evaluator's appointment. "It is rational not to appoint an independent evaluator when a respondent has shown no need for one, especially during perfunctory reexamination proceedings where the respondent has not affirmatively opted to petition for discharge." *Botruff*, 212 Ill. 2d at 177-78. Accordingly, we conclude that the trial court did not abuse its discretion by denying respondent's motion.

¶ 51                           2. *The Motion for an Independent Polygrapher*

¶ 52         Respondent also argues that the trial court erred by denying his motion for an independent polygrapher. However, as the State points out, because this court has already decided this issue in a previous appeal, we will not again address the merits of respondent's legal argument. See *Goering v. Midwest Neurology, Ltd.*, 2021 IL App (2d) 200735, ¶ 27 ("The law-of-the-case doctrine bars relitigation of an issue that has already been decided in the same case such that the resolution of an issue presented in a prior appeal is binding and will control upon remand in the trial court and in a subsequent appeal before the appellate court.").

¶ 53         In *Morris II*, we stated the following:

> "The Act does not require persons to submit to polygraph examinations. This polygraph examination is instead an element of respondent's treatment that is to be provided by DHS. The trial court does not have the authority to appoint specific individuals to oversee treatment provided in DHS facilities. [*In re Detention of Hayes*, 321 Ill. App. 3d 178, 195, 747 N.E.2d 444, 459 (2001).] That, however, is the relief respondent is seeking—an order telling DHS who to hire to oversee a (second) polygraph examination. As such, the trial court did not have the authority to grant the relief respondent requested. We therefore affirm the trial

court's dismissal of respondent's petition [for the appointment of an independent polygrapher] on that basis."

¶ 54 Here, respondent's motion seeks the same relief as his previous petition—namely, for DHS to hire an independent polygrapher to oversee a (third) polygraph examination. Because this court has already decided this issue in respondent's case, we will not do so again. Accordingly, respondent's motion to appoint an independent polygrapher is barred by the law of the case doctrine, and the trial court properly denied the motion

¶ 55 3. *Respondent's Constitutional Claims*

¶ 56 The remainder of respondent's claims can be characterized as a vague and general facial challenge to the constitutionality of the Act—for example, "[r]espondent-[a]ppellant asserts that both the Illinois legislature and the Illinois Attorney General's office are aware that the SVP act is unconstitutional in the manner in which it was drafted and by its nature[.]" Because the record shows that respondent did not raise these arguments before the trial court, they are subject to forfeiture. See *In re Commitment of Chester*, 2017 IL App (1st) 160979, ¶ 28, 87 N.E.3d 338 ("[I]t is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal[.]"). In addition, respondent's brief does not comply with the requirements as set forth in Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). "Reviewing courts are entitled to have the issues clearly defined, to be cited pertinent authorities and are not a depository in which an appellant is to dump *** argument and research as it were, upon the court." *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, 523 (1972).

¶ 57 Accordingly, because respondent neither raised the issues in the trial court nor complied with Rule 341(h)(7), respondent has forfeited his challenges to the constitutionality of the Act.

¶ 58                                III. CONCLUSION

¶ 59        For the reasons stated, we affirm the trial court's judgment.

¶ 60        Affirmed.