2023 IL App (1st) 220141-U

SECOND DIVISION
June 27, 2023

No. 1-22-0141

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| In re COMMITMENT OF TERRY JOHNSON | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09 CR 80010 |
| | ) | |
| Terry Johnson, | ) | Honorable |
| | ) | Alfred Maldonado, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County denying a petition for relief from a judgment committing the petitioner as a sexually violent person; the petition for relief from the commitment judgment failed on its face to state any grounds for relief; therefore, it is not necessary to reach the question of whether the petitioner showed diligence.

¶ 2    On June 15, 2015, the State committed petitioner, Terry Johnson, as a Sexually Violent Person (SVP) under the Sexually Violent Person Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)). On May 10, 2017, petitioner filed a *pro se* petition for relief from the judgment of commitment. On November 18, 2019, petitioner, represented by counsel, filed an amended

petition for relief from judgment, and on September 14, 2021, petitioner, now represented by a different attorney, filed a supplement to the amended petition for relief from judgment.

¶ 3 On December 16, 2021, the circuit court of Cook County denied the petition for relief from judgment. For the following reasons, we affirm.

¶ 4 BACKGROUND

¶ 5 This court affirmed multiple convictions from July 30, 1993 against petitioner for attempt (first degree murder), armed robbery, aggravated criminal sexual assault, and armed violence, for which the trial court sentenced petitioner to 25 years' imprisonment. On December 18, 2009, the State filed a petition to commit petitioner as an SVP pursuant to the Act. On November 1, 2014, while petitioner was in custody for treatment and the instant SVP proceeding was pending before the trial court, the State charged defendant with aggravated battery. The circuit court of Cook County convicted petitioner and sentenced him to four years in the custody of the Illinois Department of Corrections (DOC). On June 3, 2015, petitioner began his sentence to DOC.

¶ 6 On June 10, 2015, the State filed an amended petition to commit (collectively, the petition and amended petition will be referred to as the "petition to commit"). The amended petition alleges petitioner was convicted of aggravated criminal sexual assault; that Dr. Tsoflias diagnosed petitioner with "Other Specified Paraphilic Disorder [(OSPD)], Sexually Attracted to Non-consenting Females and Other Specified Personality Disorder, with Antisocial and Narcissistic Features;" that petitioner's mental disorder predisposes petitioner to commit acts of sexual violence. The amended petition attached and incorporated Dr. Tsoflias's Sexually Violent Persons Commitment Act Evaluation dated June 20, 2011, and an Addendum to the Sexually Violent Persons Commitment Act Evaluation dated May 29, 2014. The amended petition sought

a judgment finding petitioner an SVP under the Act and committing petitioner to the Illinois Department of Human Services (DHS) for control and treatment.

¶ 7      The June 20, 2011 report by Dr. Vasiliki Tsoflias states, in pertinent part, that Dr. Tsoflias interviewed petitioner at a DHS treatment and detention facility. The State first evaluated petitioner to determine if petitioner was an SVP in 2009. Petitioner's medical notes describe petitioner as manipulative including using threats of self-harm. The report states petitioner "has a well-documented history of making inappropriate and violent sexual comments to female staff." Petitioner had previously been diagnosed with "Paraphilia NOS with Sadistic Features and Antisocial Personality Disorder." The report notes a history of prescriptions for the drugs Remeron, Thorazine, Mellaril, Haloperidol, and Cogentin but that petitioner "is currently not prescribed any psychotropic medication."

¶ 8      The June 2011 report summarizes petitioner's charges and convictions. The summary in the report lists a November 10, 1990 charge of Aggravated Criminal Sexual Assault and a December 30, 1990 charge of Criminal Sexual Abuse. Dr. Tsoflias's report summarizes the circumstances of petitioner's conviction for aggravated criminal sexual assault, the details of which do not need to be repeated here for an understanding of our disposition. But it does bear saying that the allegations against petitioner involve conduct that can fairly and accurately be described as "brutal." The report states that at the time of the arrest petitioner told police he and the victim had been dating for three and one-half weeks and he denied having sexual intercourse with the victim. Petitioner told a different officer he and the victim had been dating for one week. The victim denied ever seeing petitioner before the attack. In the interview with Dr. Tsoflias petitioner admitted the offense and gave details of the offense similar to those stated in the summary in the report.

¶ 9    Dr. Tsoflias's report summarizes an arrest in December 1990. The summary of the December 7, 1990 arrest begins "This is an arrest on a follow-up of criminal sexual assault and kidnapping" that occurred on November 8, 1990. The doctor's report states no records or court documents exist regarding a "Criminal Sexual Abuse arrest" on December 30, 1990 and that during the interview with Dr. Tsoflias petitioner "stated in 1990 he was arrested and falsely accused of sexual assault after his girlfriend filed a police report because he slept with her best friend."

¶ 10    Petitioner was found to have committed two acts of sexual misconduct while in prison. Petitioner began sex offender treatment in 2010. The report states petitioner "would greatly benefit from continued participation and completion of the sex offender treatment program." The report states Dr. Tsoflias's diagnoses to a reasonable degree of psychological certainty then lists the criteria for each diagnosis. The report applies those criteria to petitioner and states, in pertinent part:

"A. The essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving *** 2) the suffering or humiliation of oneself or one's partner, or 3) children or other non-consenting persons that occur *over a period of at least 6 months*.

- [Petitioner] has engaged in forced sexual behavior with at least two women
- The acts occurred through a period of over 1 year

B. The behavior, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning

- *[Petitioner] has been arrested and convicted on three separate occasions for his sexual offenses.*

- [Petitioner] was convicted for a sexual offense and has spent the majority of his adult life in IDOC.

Sadistic Features as evidenced by [petitioner] threatening, choking, and attempting to electrocute his victim throughout his index sexual assault [(petitioner's current offense)]. During the sexual assault of 1990, [petitioner] used a crowbar to threaten and force his victim into sexual intercourse.

\* \* \*

The Criteria for the diagnosis of Personality Disorder NOS with Antisocial and Narcissistic Features listed in the Diagnostic and Statistical Manual of Mental Disorders—Fourth Edition—Text Revision that [petitioner] meets are:

- Antisocial Features: The features [petitioner] exhibits are:

  o *Failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest*

  o Deceitfulness as indicated by repeated lying

  o Impulsivity

  o Irritability and aggressiveness

  o Reckless disregard for the safety of others

  o Lack of remorse

- Narcissistic Features: The Narcissistic Features [petitioner] exhibits are:

  o Has a sense of entitlement (expects automatic compliance with his expectations)

o Interpersonally exploitive

o Lacks empathy." (Emphases added.)

¶ 11    Dr. Tsoflias applied an adjusted actuarial approach to assess petitioner's risk of committing future acts of sexual violence and placed petitioner in the High Risk category to engage in a new act of sexual violence and be arrested, charged, or convicted of this crime. A different screening tool placed petitioner at moderate risk of sexual reoffense but the report states this score "may be an underestimation of his true risk. Due to the fact that there is little reliable information available regarding [petitioner's] behavior prior to his incarceration ***." A third diagnostic tool resulted in a score that "is indicative of a very high degree of psychopathic traits relative to incarcerated adult male offenders."

¶ 12    Specific "dynamic" (changeable) risk factors for sexual recidivism that petitioner possesses include:

"[Petitioner] has been arrested for numerous sexual offenses.

[Petitioner] has been convicted of sexual assault

[Petitioner's] index offense and prior offenses include threats and violence towards the victims as part of the sexual assaults

[Petitioner] has been incarcerated for his index offense for the majority of his adult life.

[Petitioner] greatly minimizes his offending and the effects they have had on the victims

[Petitioner] does not take responsibility for his actions

[Petitioner] has been written up for sexual misconduct tickets while in IDOC

[Petitioner] has not completed sex offender treatment."

¶ 13    Dr. Tsoflias opined that "the findings from the various methods all suggest [petitioner] is a continuing risk for sexual offense recidivism." Dr. Tsoflias concluded that petitioner has mental disorders that affect petitioner's emotional and volitional capacity but "these mental disorders alone are not the only factors predisposing him to engage in acts of sexual violence." Other empirical factors "indicate [petitioner] is a substantial and continuing risk for sexual offense recidivism." Dr. Tsoflias recommended finding petitioner to be an SVP and to be civilly committed.

¶ 14    The May 29, 2014 Addendum to the Sexually Violent Persons Commitment Act Evaluation report updates petitioner's treatment progress and finds that petitioner had stopped participating in treatment. His commitment to treatment is described as " 'questionable' at times." The Addendum also updates petitioner's diagnoses based on the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, First Edition (DSM-5). Utilizing the DSM-5 Dr. Tsoflias updated petitioner's diagnoses to "Other Specified Paraphilic Disorder [(OSPD)], sexually attracted to non-consenting females" and "Other Specified Personality Disorder, with Antisocial and Narcissistic Features." The Addendum states:

> "For a period of approximately 15 months, [petitioner] engaged in forced sexual behavior with at least two non-consenting women. Both victims were strangers that he abducted from the street, while threatening them with weapons and physical harm. He utilized verbal and physical threats during the commission of the sexual acts, as well as after the acts were completed. He repeatedly physically and sexually assaulted the victim of his index offense and attempted to kill her on, at least, three occasions. *[Petitioner] has been arrested three times and convicted once for sexual offenses. As a result, he has spent the majority of*

*his adult life in the IDOC.* His paraphilia meets the criteria for a paraphilic disorder in that its satisfaction has entailed personal harm, and risk of harm, to others."

¶ 15 The Addendum lists many of the same features petitioner possesses that are listed in the original report. Dr. Tsoflias's Addendum reaches the same conclusions regarding petitioner and continues to recommend finding petitioner to be an SVP and civilly committing him.

¶ 16 On June 15, 2015, petitioner entered a stipulation that "the evidence that would be presented at trial is sufficient for the Court to find [petitioner] to be a sexually violent person beyond a reasonable doubt." The Stipulation stated the parties agree that "upon a finding that [petitioner] is a sexually violent person, [petitioner] will be committed to the custody of [DHS] for control, care and treatment in a secure setting." At the hearing on the Stipulation, the trial court orally admonished petitioner about his rights. Petitioner responded no one forced him to enter the Stipulation nor promised him anything to get him to agree. The court asked petitioner if he reviewed "all of the pages" of the Stipulation and petitioner responded: "Yes, sir, my attorney and I, we read it at my own pace." He added he had taken some college courses in DOC and "I became real knowledgeable in the law; so I do understand the significance of everything that I am giving up."

¶ 17 The Stipulation states petitioner was entering the Stipulation "freely and voluntarily and after consulting with his attorney," that if the matter proceeded to trial the State would call Dr. Tsoflias and Dr. Raymond Wood to testify, and that each would testify consistently with their psychological reports. Both doctors' reports are attached to the Stipulation as exhibits.

¶ 18 Dr. Wood's report is dated April 21, 2010, and makes similar findings to the findings in Dr. Tsoflias's reports. As it pertains to this appeal, Dr. Wood's report specifically states that

petitioner refused to meet with Dr. Wood. Information in Dr. Wood's report came from review of petitioner's records. Dr. Wood's report contains a chart summarizing petitioner's recorded criminal history. The chart lists a November 10, 1990 charge for aggravated criminal sexual assault that was not approved and a December 30, 1990 charge for criminal sexual abuse that was stricken. The chart lists petitioner's convictions for attempt (first degree murder), armed robbery, aggravated criminal sexual assault, and armed violence, and that the trial court sentenced petitioner to 25 years' imprisonment. Petitioner was born July 23, 1970, and committed the offenses in March 1992.

¶ 19      Dr. Wood's report includes a narrative of petitioner's contacts with police. Dr. Wood's report states that an arrest report indicated that in October 1990 petitioner was arrested for an altercation with a woman. That woman told police, on November 10, 1990, that petitioner approached her with a crowbar and ordered her to follow petitioner. Petitioner held her by the throat and held a metal rod and forced her to have sexual intercourse with petitioner. Petitioner also threatened to kill the woman. Dr. Wood's report states felony charges were not approved. Dr. Wood's report references a November 13, 1990 arrest report for an incident involving the same woman and states that police arrested petitioner on December 4, 1990, when the woman saw petitioner wearing items taken from her apartment during a burglary. The report states police again arrested petitioner on December 30, 1990 and charged petitioner with criminal sexual abuse. The charge was stricken in February 1991.

¶ 20      Dr. Wood's report, like Dr. Tsoflias's report, also contains a detailed narrative of the victim's account of petitioner's March 1992 offenses. The victim's narrative includes multiple instances of forced intercourse and attempts to take her life.

¶ 21    Dr. Wood's report noted two instances of discipline for sexual misconduct while in prison, one on October 21, 2001, and the second on April 4, 2002, but stated that "[n]ot all of [petitioner's] sexual misconduct was document in Disciplinary Reports." Petitioner was prescribed psychotropic medication but Dr. Wood states "that medication did not appear to have any significant, behavioral impact." Petitioner was admitted to the DHS treatment facility on December 24, 2009. Dr. Wood's report stated petitioner has not entered treatment at the DHS facility.

¶ 22    Dr. Wood diagnosed petitioner with "Paraphilia, Not Otherwise Specified, Non-consenting Females, Nonexclusive Type Exhibitionism; Alcohol Abuse, In a Controlled Environment; Cannabis Abuse, In a Controlled Environment; Antisocial Personality Disorder." The report states the essential features of paraphilia including that "the individual must have acted on these urges." The report then states that petitioner "was arrested twice in 1990 for sexual offenses; he was convicted of Aggravate [*sic*] Criminal Sexual Assault in 1993."

¶ 23    Dr. Wood describes various diagnostic tools, the factors they employ, and how petitioner fit those factors. Dr. Wood concludes petitioner has four mental conditions as defined by the Act; those disorders affect his emotional or volitional capacity and predispose petitioner to acts of sexual violence; and petitioner "was at no less than High risk to commit addition [*sic*] sexually violent acts." Dr. Wood wrote: "It is this examiner's opinion, to a reasonable degree of psychological certainty, that [petitioner] is dangerous—his mental disorders make it substantially probable he will engage in acts of sexual violence."

¶ 24    Dr. Wood's September 30, 2014 Updated Psychological Examination report summarizes any changes in petitioner's treatment and their impacts, updates petitioner's diagnoses based on the DSM-5, and reexamines petitioner's risk to reoffend in light of "changes in the field of

actuarial risk assessment." Dr. Wood describes petitioner's adjustment to commitment to continue to be poor and describes multiple disciplinary infractions petitioner committed including for fighting and battery. Dr. Wood opined, to a reasonable degree of psychological certainty, that petitioner met the DSM-5 criteria for the following mental disorders:

"Antisocial Personality Disorder

Other Specified Paraphilic Disorder, Nonconsent, in a controlled environment

Exhibitionism, In a controlled environment

Alcohol Use Disorder, In a controlled environment

Cannabis Use Disorder, In a controlled environment

V62.5 Imprisonment or other Incarceration."

¶ 25    Dr. Wood describes the updated risk assessment tools and applies them to petitioner, concluding that petitioner's score "placed him in the High risk category." A different diagnostic tool placed petitioner in the "Moderate" risk to reoffend category. Dr. Wood summarizes his updated report stating:

"It is this examiner's opinion, to a reasonable degree of psychological certainty, that [petitioner] has four mental conditions as defined by the Act ***. These disorders alone and in combination, constitute mental disorders as defined by the Act; that is *** predisposing him to acts of sexual violence.

An actuarial assessment of [petitioner's] risk for re-offending was conducted. That assessment indicated [petitioner] was at no less than Moderate to High risk to commit addition [*sic*] sexually violent acts. ***

It is this examiner's opinion, to a reasonable degree of psychological certainty, that [petitioner] is dangerous—his mental disorders make it substantially probable he will engage in acts of sexual violence.

Therefore, it is this examiner's opinion to a reasonable degree of psychological certainty that [petitioner] is a sexually violent person."

¶ 26    The trial court accepted the Stipulation and entered an Agreed Order. The Agreed Order states, in part, that petitioner read the Petition for Sexually Violent Person Commitment and understands the allegations; petitioner understands his rights under the Act; and that petitioner "has read the Stipulation and Agreement between the People and [petitioner,] and [petitioner] understands the Stipulation and Agreement and that it has been entered into by [petitioner] knowingly, freely and voluntarily and after consulting with his attorney."

¶ 27    The Agreed Order states that if petitioner is adjudged to be an SVP the trial court shall order him committed to DHS for control and treatment, and that petitioner "will not physically be in the custody of [DHS] until the completion of the sentence in [DOC] for 2014CF34 [(the November 14, 2014 aggravated battery that took place in the DHS treatment facility)]." Petitioner's June 10, 2017 Sexually Violent Persons Commitment Act Psychological Re-Examination report states the trial court sentenced petitioner to four years' imprisonment with DOC, that petitioner was admitted to DOC on June 3, 2015, and that petitioner was returned to DHS on November 12, 2015. The Agreed Order also states that petitioner is not under the influence of any medication that would interfere with his ability to knowingly and voluntarily enter into the Stipulation and Agreement.

¶ 28    The Agreed Order stipulates that petitioner is an SVP eligible for commitment to DHS for control and treatment in a secure setting. The trial court ordered that it accepts the Stipulation

and petitioner is adjudged to be an SVP. The Agreed Order commits petitioner to DHS for control and treatment until further order of the court.

¶ 29    On May 10, 2017, petitioner filed a *pro se* petition for relief from the judgment of commitment. Petitioner's *pro se* petition states, in pertinent part, that petitioner was in DOC custody when he entered the Stipulation, including the provision that he would not be in DHS custody until the completion of his sentence for the aggravated battery. The petitioner states that on November 12, 2015, DOC "released" petitioner to serve his mandatory term of supervised release following the period of incarceration, but that he was placed in the physical custody of DHS. Petitioner states he had not completed his sentence, which was not scheduled to be completed until November 12, 2016. Petitioner sought relief from the judgment because the State violated the terms of petitioner's Stipulation and Agreed Order by placing petitioner in the physical custody of DHS when his criminal sentence had not been completed.

¶ 30    On November 18, 2019, petitioner, represented by counsel, filed an amended petition for relief from judgment. Petitioner's amended petition for relief from judgment added the new argument that petitioner did not have the opportunity to read the amended Petition for Sexually Violent Person Commitment before it was filed or before entering the Stipulation. The amended petition for relief from judgment admits petitioner did read the original petition for commitment. Petitioner also argued the Stipulation did not specifically inform him that he was giving up his right to a Dispositional Hearing—the Stipulation purports to waive petitioner's right to be examined for the purpose of a "pre-dispositional hearing and waived his rights to a dispositional hearing." The trial court did not conduct a dispositional hearing "as required by 725 ILCS 207/40" and, petitioner claimed, a stipulation to the facts "does not obviate the need to hold a dispositional hearing" (citing *In re Commitment of Walker, Sr.*, 2014 IL App (2d) 130372, ¶¶ 8-

14; *In re Commitment of Chester*, 2017 IL App (1st) 160979, ¶ 8.)[1] Petitioner also argued he did not read or sign the Agreed Order before it was entered and that "on the date he signed the Stipulation and Agreement [petitioner] was adjusting to a lack of medication." The amended petition states petitioner had been prescribed medication that he had not received since June 3, 2015. The petition alleges that during this time petitioner "often felt sleepy and confused." Finally, the amended petition for relief from judgment argues the diagnosis of "Other Specified Paraphilic Disorder sexually attracted to non-consenting females" is "controversial" and "often criticized by members of the psychiatric community."

¶ 31     The amended petition for relief from judgment restates the argument that petitioner "did not receive the benefit of his bargain with the State when he was transferred to [DHS] prior to the completion of his term of [MSR.]" The amended petition for relief from judgment alleges that petitioner was diligent in presenting a defense and in filing his 2-1401 petition. Petitioner sought to vacate the Stipulation and Agreed Order and allow petitioner to proceed to trial on the State's amended petition for SVP commitment.

¶ 32     On September 14, 2021, petitioner, represented by a new appointed attorney, filed a supplement to petitioner's amended petition for relief from the judgment of commitment. The supplement argues, for the first time, that "the facts upon which the Stipulation and Agreement in this case is based are untrue." The supplement alleges Dr. Tsoflias "based [petitioner's] diagnosis on the fact that [petitioner] 'has been arrested and convicted on three separate

---

[1]     *Chester*, relying on *Walker*, found "no basis either in the plain language in the Act or in case law that would prohibit a respondent, subject to civil commitment under the Act, to knowingly enter into a stipulation that he or she is a sexually violent person." *In re Commitment of Chester*, 2017 IL App (1st) 160979, ¶ 25.

occasions for his sexual offenses.' " The supplement also claims that Dr. Wood "concluded that [petitioner] suffered from OSPD Non-Consent because of the two arrests for sex offenses in 1990 and the conviction for a sex offense in 1993." Petitioner alleged: "Based on documents tendered in discovery and current counsel's additional investigation, it is clear that [petitioner] was not arrested for two separate sex offenses in 1990. Moreover, the first arrest was for criminal sexual abuse, which is not a sexually violent offense under the SVP Act. As such, [petitioner] did not display symptoms of OSPD, Non-Consent for more than six months and should not have been diagnosed with that mental disorder." Petitioner argues his former attorney was ineffective for failing to review the documents in discovery or to advise petitioner against the Stipulation but instead petitioner "had a viable defense at an SVP commitment trial."

¶ 33   The supplement admits the doctors' reports are based on a November 10, 1990 Chicago Police Department Arrest Report but asserts the report lists the offense as "Criminal sex. abuse." However, the December 30, 1990 arrest was on a bench warrant for failure to appear in court and not a new offense. Petitioner argues "it is clear that a bench warrant was issued for [petitioner] on December 7, 1990, because [petitioner] did not appear in court for the case stemming from the November 10, 1990, arrest." The supplement to the petition argues that petitioner's diagnoses require petitioner to have presented the symptoms of OSPD Non-Consent for a period of six months or more but, based  on the fact "the November 10, 1990, criminal sexual abuse allegation was falsely reported by [petitioner's] disgruntled partner and the December 30, 1990, arrest was based on a warrant resulting from the November 13, 1990, arrest," petitioner has only "one instance" of sexually violent behavior in his background and "[t]here is no evidence that [petitioner] has presented the symptoms *** for a period of six or more months."

¶ 34    The supplement also argues that contrary to statements in Dr. Tsoflias's report, the victim from the November 10, 1990 arrest was not a stranger to petitioner but in fact they had been dating. Also, Dr. Tsoflias stated one of defendant's arrests was for aggravated criminal sexual assault when it was in fact for criminal sexual abuse (not aggravated criminal sexual abuse) and stated petitioner was arrested in December 1990 for criminal sexual abuse. In fact, petitioner was arrested for failure to appear on the November 1990 criminal sexual abuse. Dr. Wood allegedly similarly based his diagnoses on arrests for two offenses in 1990 and a third in 1993. Petitioner's supplement also argues petitioner received ineffective assistance of counsel based on counsel's alleged failure to investigate petitioner's convictions to gain impeachment evidence against the State's doctors and thereby raise a defense to a finding that petitioner was an SVP. Specifically, the supplement argues:

    "Former counsel's performance in this case was deficient where he failed to identify from the records tendered in discovery that [petitioner] had not been charged with a sexually violent offense in 1990 and counsel thereafter did not perform additional investigation to verify that was the case."

¶ 35    Petitioner argues he was prejudiced by counsel's allegedly deficient performance because "the State cannot prevail at an SVP trial unless there is evidence of at least six months of behavior *** associated with a paraphilic disorder;" proper investigation would have made it clear petitioner had a viable defense necessitating a discussion with petitioner and whether to enter the Stipulation; and "there was a reasonable probability that [petitioner] would have prevailed at trial based on the State's inability to prove that [petitioner] was suffering from OSPD, Non-consent." Petitioner claims that had he been properly advised he would not have entered the Stipulation.

¶ 36    On December 16, 2021, the trial court denied the petition for relief from judgment.

¶ 37    This appeal followed.

¶ 38                                    ANALYSIS

¶ 39    This is an appeal from a judgment denying a petition for relief from judgment brought pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)). "To be entitled to relief under section 2-1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Initially, the petitioner must "set forth specific factual allegations" supporting each element and ultimately must prove a right to the relief sought by a preponderance of the evidence. *Id*. (citing, *inter alia*, *Mitchell v. Seidler*, 68 Ill. App. 3d 478, 482 (1979) (citing *McKinnon v. Yellow Cab Co.*, 31 Ill. App. 3d 316, 333 (1975))). "Where the central facts of the petition are controverted, a full and orderly evidentiary hearing must be held by the court." *McKinnon*, 31 Ill. App. 3d at 317-18.

¶ 40    "One of the guiding principles in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court to prevent enforcement of a judgment when doing so would be unfair, unjust, or unconscionable." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004). Therefore, use of a petition pursuant to section 2-1401 is not limited to correcting errors of fact but may also be used to challenge allegedly defective judgments for legal reasons. *Id*. Because defendants subject to proceedings under the Sexually Violent Persons Act have a right to effective assistance of counsel (see *id*. at 299-300; *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 20), those defendants are "entitled to challenge the effectiveness of [their]

attorney by means of a petition under section 2-1401" (*id*. at 302). See *Lawton*, 212 Ill. 2d at 299-300 ("If this were a conventional civil case in which a litigant sought to collaterally attack a judgment on the grounds that his lawyer was negligent, there would be no question that relief would not lie under section 2-1401. But this is not such a case. It is a proceeding under the Sexually Dangerous Persons Act in which the defendant has a constitutional right to effective assistance of counsel.").

¶ 41 "As noted above, two elements are generally necessary to establish a legally sufficient section 2-1401 petition, namely a meritorious defense or claim in the original action, and due diligence on the part of the petitioner." *Airoom, Inc.*, 114 Ill. 2d at 221. "Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, depending upon the facts and equities presented. [Citations.] As such, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion." *Id*.

¶ 42 On appeal, petitioner first argues the petition for relief from judgment sets forth specific factual allegations to support a meritorious defense that petitioner did not enter the Stipulation knowingly and voluntarily because at the time petitioner suffered from confusion due to a lack of medication. Petitioner spends a great amount of this argument on establishing that a knowing and voluntary standard should apply to the Stipulation. The State does not challenge this claim. Instead, the State argues that "even if the stipulation here was akin to a guilty plea, it was still validly entered because [petitioner's] claim of confusion and fatigue does not show he entered the stipulation unknowingly and involuntarily."

¶ 43 Applying the "knowing and voluntary" standard to the entry of the Stipulation results in our finding, for the reasons explained below, that as a matter of law, petitioner failed to set forth

sufficient specific factual allegations supporting a defense that petitioner did not enter the Stipulation knowingly and voluntarily.

¶ 44    To determine whether a person relinquishes their rights "knowingly and voluntarily" this court generally considers the totality of the circumstances including the characteristics of the party relinquishing the right. See *People v. Foster*, 168 Ill. 2d 465, 476 (1995). A person acts "knowingly" when relinquishing a right when it is an intentional relinquishment or abandonment of a known right. *Boykin v. Alabama*, 395 U.S. 238, 243 n5 (1969). To be knowing, the waiver must be "made with a full awareness of the nature of the rights being waived and the resulting consequences of waiving those rights." *People v. Buschauer*, 2022 IL App (1st) 192472, ¶ 65. See also *People v. McClanahan*, 191 Ill. 2d 127, 137 (2000) ("waiver must be 'an intentional relinquishment or abandonment of a known right' "). A person acts "voluntarily" when they are fully aware of the nature of the right being abandoned and the consequences of the decision to abandon them. *Buschauer*, 2022 IL App (1st) 192472, ¶ 65. "The test of voluntariness is whether the defendant [acted] freely and voluntarily, without compulsion or inducement of any kind, or whether his or her will was overborne at the time ***." *People v. Rodriguez*, 2022 IL App (1st) 200315, ¶ 119.

¶ 45    "Evidence of the defendant's limited mental or intellectual capacity at the time ***, alone, does not render *** statements involuntary or establish that the defendant was incapable of knowingly and intelligently waiving his *** rights. Limited intellectual capacity is one of several factors to be considered under the totality of the circumstances." *Foster*, 168 Ill. 2d at 476. Where a person claims that the presence or absence of medication impacted their ability to knowingly and voluntarily waive or abandon a known right they must plead specific factual allegations supporting a finding that the presence or absence of the medication affected their

ability to understand the nature and purpose of the relinquishment or to aid their attorney in the decision. See *People v. Bryant*, 2016 IL App (5th) 140334, ¶ 33 ("The record further indicates that the defendant's medications had no effect on his ability to understand the nature and purpose of the proceedings against him or to aid in his defense."). Alternatively, the person must also make specific factual allegations that their alleged mental or emotional state impacted their ability to make a knowing and voluntary relinquishment of a known right. See *id.* ¶ 34 ("there is no credible evidence that the defendant's alleged emotional state impacted his ability to make a knowing and voluntary guilty plea").

¶ 46     An appropriate showing can also be made if the record supports finding that at the relevant time the person was incoherent or otherwise indicated that they failed to understand what was happening or why. See *People v. Sanchez*, 169 Ill. 2d 472, 484-85 (1996) (affirming first-stage dismissal of postconviction petition, rejecting argument trial court should have conducted hearing to determine the defendant's fitness for sentencing based on suicide attempt where the evidence documenting the defendant's suicide attempt failed to show that the attempt diminished or impaired the defendant's capacity to understand the proceedings or to assist in his own defense while on the contrary the defendant's statements were coherent and did not suggest that he failed to understand the admonitions or the purpose or nature of the proceedings).

¶ 47     In this case, petitioner argues that the petition and his affidavit provide a sufficient factual basis for his defense. We disagree. Petitioner failed to set forth a sufficient factual basis to support a defense that petitioner did not knowingly and voluntarily enter the Stipulation due to his lack of medication.

¶ 48     The petition alleges that on the date petitioner signed the Stipulation he "was adjusting to a lack of medication." The Stipulation failed to ask whether petitioner "was taking medication,

prescribed medication, or should be taking medication." Petitioner was previously prescribed medication "but had not been given his prescribed medication since June 3, 2015." The petition alleges that "[d]uring this time period from June 3, 2015, through June 15, 2015 [(the date of the Stipulation)], and beyond, [petitioner] often felt sleepy and confused." Petitioner's affidavit in support of the petition for relief from judgment avers, as it pertains to this argument, that from April 2014 through June 2, 2015, petitioner was prescribed Doxepin which, on information and belief "was prescribed to treat [petitioner's] depression, difficulty with sleep, and was an anti-psychotic medication." Petitioner avers he was transferred to DOC on or about June 3, 2015 and that after placement in DOC petitioner was no longer provided with this medication. Petitioner avers that "during the time period and including June 15, 2015, I was adjusting to my lack of medication and I was commonly sleepy, confused and suffered from vertigo."

¶ 49    The petition for relief from judgment contains no specific facts to support finding that any of petitioner's alleged symptoms impaired his ability to knowingly and voluntarily enter the Stipulation. Petitioner's alleged sleepiness and vertigo on their face are irrelevant to that question without more information. Construing the petition liberally, petitioner did allege "confusion" but he did so only generally, not that petitioner was confused about the nature and purpose of the proceedings. Defendant's later claim that he did not know he was waiving his right to a dispositional hearing notwithstanding, the record of the proceeding on the Stipulation supports finding that petitioner did understand what his rights were, that he was giving them up, and the consequences of doing so—specifically that he would be adjudged an SVP without presenting any evidence. Petitioner failed to set forth specific facts to support finding any "confusion" he felt at the time impaired his ability to understand the proceedings or to aid his attorney in them or that at the time of the hearing on the Stipulation petitioner was incoherent or otherwise failed to

understand what was happening. The fact that petitioner's responses to the trial court's inquiries—including his "knowledge of the law" and cooperation with his attorney—paint a different picture is incontrovertible. Therefore, we find as a matter of law petitioner failed to set forth sufficient facts to support a meritorious defense that he did not knowingly and voluntarily enter the Stipulation.

¶ 50    Next, petitioner argues the petition for relief from judgment sets forth specific factual allegations to support a meritorious defense that petitioner received ineffective assistance of counsel prior to entering the Stipulation. Specifically, petitioner argues the petition sets for specific factual allegations that counsel was ineffective in failing to investigate petitioner's case and advise petitioner he had a that a viable defense to a finding that petitioner is an SVP. That defense, petitioner argues, is to establish a reasonable doubt exists as to whether petitioner has a mental disorder because "the opinions of the State's experts could be undermined" by attacking the experts' reliance on documents detailing petitioner's criminal history.

¶ 51    Petitioner claims Dr. Wood "based [petitioner's] diagnosis on a claimed arrest on November 10, 1990, for aggravated criminal sexual assault, an arrest for criminal sexual abuse on December 30, 1990, and a conviction for aggravated criminal sexual assault *** on March 16, 1992." Both experts erroneously "relied" on the November 10, 1990 arrest as being for aggravated criminal sexual assault when the police report lists the offense as misdemeanor criminal sexual abuse. Petitioner also asserts both Dr. Tsoflias and Dr. Wood regarded an arrest on December 10, 1990 as an arrest for a new sex offense but it was actually for failing to appear in court for the November 10 offense. Regardless, petitioner claims the November 10, 1990 arrest never resulted in a conviction which would permit petitioner's attorney to argue to the jury that any reliance on the November 10, 1990 arrest was unreasonable.

¶ 52    Finally, petitioner complains that Dr. Tsoflias reported that both of petitioner's victims were strangers but petitioner claimed to know and to have been dating one of the victims and told police the victim made a false report against him. Petitioner argues these facts "undermined the opinions of Dr. Tsoflias and Dr. Wood and could have been used to defend this case at trial. Petitioner argues that "the State's witnesses could have been confronted" with the alleged mischaracterization of the November 10 offense, the misapprehension of the December 10 arrest as a new offense, and the allegedly erroneous belief one victim was a stranger to petitioner, and that would have cast doubt on the accuracy of their opinions and permitted counsel to argue reasonable doubt as to petitioner's diagnoses. Petitioner separately argues the petition set forth a meritorious defense that there is a reasonable doubt as to whether he suffers from a mental disorder as defined by the Act where he was not accurately diagnosed because his alleged disorder cannot be diagnosed reliably.

¶ 53    We find that the petition for relief from judgment fails to set forth specific factual allegations to support a meritorious defense that petitioner received ineffective assistance of counsel prior to entering the Stipulation. Specifically, petitioner failed to set forth specific factual allegations to support a claim of prejudice from stipulation-counsel's allegedly deficient performance. Therefore, we find the petition fails to allege a meritorious ineffective assistance of counsel defense.

¶ 54    A defendant subject to proceedings under the Sexually Violent Persons Act has a right to effective assistance of counsel and is "entitled to challenge the effectiveness of his attorney by means of a petition under section 2-1401." *Lawton*, 212 Ill. 2d at 302.

> "Claims that this right has been denied are judged according to the two-
>
> prong, performance-prejudice test established in *Strickland v. Washington,* 466

U.S. 668 (1984). [Citation.] Under *Strickland,* a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different." *Id.*

To set forth a claim of ineffective assistance of counsel a petitioner must allege specific facts to satisfy both the performance and prejudice prongs of the test. See *In re Commitment of Anderson,* 2014 IL App (3d) 121049, ¶ 31 ("A persons claiming ineffective assistance of counsel must satisfy both the performance and prejudice prongs of the test in order to prevail. *People v. Evans*, 209 Ill. 2d 194, 220 (2004)."). "It is well accepted that [a] defendant's failure to establish prejudice under *Strickland* is fatal to an allegation of ineffective assistance of counsel, and that if no prejudice ensued, a claim may be disposed of on that ground alone, without considering the separate question [of] whether counsel was deficient." (Internal quotation marks omitted.) *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 38.

¶ 55    The prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the process. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In this context, petitioner must set forth specific facts to support a meritorious claim that but for counsel's allegedly deficient performance, petitioner would not have entered the Stipulation. See *id*. ("to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). A bare allegation that petitioner would not have stipulated and proceeded to trial if counsel had not been deficient is not enough to establish prejudice. See

*People v. Dodds*, 2014 IL App (1st) 122268, ¶ 42. Petitioner must articulate a plausible defense that could have been raised at trial. *Id*. In assessing the allegedly "plausible defense" this court may consider whether the record contradicts petitioner's defense. Compare *Dodds*, 2014 IL App (1st) 122268, ¶ 47 ("the defendant asserted that at trial he would have raised the affirmative defense that at the time the crime was committed he did not know that the victim was under 18 years of age. Since child pornography is a specific intent crime [citation], the defendant asserted the State could not have proven him guilty beyond a reasonable doubt. After reviewing the limited record that is before us, we find nothing therein which would contradict the defendant's well-pleaded affirmative defense.").

¶ 56    In this case, petitioner has pled a defense (a reasonable doubt he suffers from a mental disorder) and petitioner has claimed that counsel failed to inform petitioner of available defenses (that he does not suffer a mental disorder under the Act and creating a reasonable doubt by impeaching the State's witnesses) to the petition for commitment. Where the alleged error of counsel is a failure to advise the client of a potential defense, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

¶ 57    Because petitioner has raised the issue separately, for the reasons discussed below, we reject petitioner's separate argument that he set forth specific facts to support a meritorious defense that he was not or cannot be properly diagnosed with a mental disorder. That leaves us with petitioner's allegations counsel failed to inform petitioner of the availability of a defense in the form of impeaching the State's witnesses with their reliance on erroneous information in petitioner's criminal history and using that to attack their resultant psychological diagnoses. We find there is no reasonable probability that, had counsel informed petitioner of these alleged

defenses, and petitioner raised them, it would have affected the outcome of the process or that the outcome of the proceeding would have been any different. That is, it would not have been rational not to accept the Stipulation and there is no reasonable probability that the trial court would not have found petitioner to be an SVP. See *People v. Brown*, 2021 IL App (1st) 180991, ¶ 74 ("when a defendant's ineffective assistance claim alleges that counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); *People v. Hatter*, 2021 IL 125981, ¶ 26 ("When, as here, a claim involves a defendant's prospects for acquittal, the defendant must show that he would have been better off going to trial because he would have been acquitted or had a viable defense. [Citations.]). (Internal quotation marks omitted.). We find this to be so because petitioner's alleged defenses have no merit.

¶ 58    Petitioner complains of the experts' misuse of the November 10 and December 30 arrests. While true both experts' reports mischaracterized the second arrest as being for a separate offense we do not agree that either doctors' diagnosis is "based" on the existence of a second arrest for a new offense. We note the "requirement" that petitioner exhibited symptoms for a period of at least six months is one element of one factor of the many the experts relied on. Based on the language in the reports, we find that whether or not the arrest on November 10 resulted in a conviction for a sex offense under the Act is irrelevant. See *infra*, ¶ 60. Regardless, any reliance placed on that arrest is miniscule in the context of the entire psychological examination the doctors undertook, and impeaching the witnesses with the information petitioner was not convicted would definitely not change their opinion and would not sway a trier of fact to find that petitioner is not an SVP. Nor do we agree that any rational trier of fact would believe

that petitioner's entire diagnosis rests on one stick---that petitioner was allegedly arrested twice in 1990 for two separate offenses, which he was not—in the very large bundle of sticks the doctors relied on for petitioner's diagnosis (see *infra*. ¶¶ 7-15, 18-26).

¶ 59    We note that the petition itself alleges petitioner is misdiagnosed because the diagnosis requires petitioner to have presented the symptoms of OSPD Non-Consent for a period of six months or more but, allegedly, based on the fact "the November 10, 1990, criminal sexual abuse allegation was falsely reported by [petitioner's] disgruntled partner and the December 30, 1990, arrest was based on a warrant resulting from the November 13, 1990, arrest," petitioner has only "one instance" of sexually violent behavior in his background and "[t]here is no evidence that [petitioner] has presented the symptoms *** for a period of six or more months." Petitioner has abandoned this specific argument—that petitioner has not presented symptoms for a period of at least six months—on appeal.[2] Therefore, petitioner has forfeited that argument and we make no comment or give any opinion regarding its merit. *Clanton v. Oakbrook Healthcare Center, Ltd.*, 2022 IL App (1st) 210984, ¶ 78 ("See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ('Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.' ").

¶ 60    Nonetheless, the misstatement of fact regarding the December 30 arrest formed only a small element in the overall diagnosis. More importantly, the import of the arrests at those points in the diagnoses was not the fact or nature of the arrest but their impact on petitioner, which remained unchanged absent the alleged second arrest. The factor to which Dr. Tsoflias applied

---

[2]    Petitioner also abandoned his argument DOC transferred him to DHS before petitioner completed his sentence of incarceration which includes MSR, that he did not know specifically that he was waiving his right to a dispositional hearing, and that he did not read the amended petition or Agreed Order. Petitioner has also forfeited those arguments.

the fact petitioner "has been arrested and convicted on three separate occasions for his sexual offenses" was whether the "behavior, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Similarly, Dr. Wood's report states "the individual must have acted on these urges, or the urges themselves cause marked distress or interpersonal difficulties" before noting that petitioner "was arrested twice in 1990 for sexual offenses."

¶ 61    As Dr. Tsoflias noted, petitioner has spent most of his adult life in prison as a result of his behaviors and has suffered intense "distress or interpersonal difficulties" both while incarcerated and in treatment as evidenced by his numerous disciplinary violations. The impact on his life remains unchanged regardless whether petitioner has been arrested on two or three separate occasions. In other words, a rational trier of fact could find that neither doctor relied on the arrests to find that petitioner exhibited symptoms for a period of at least six months—and there is ample evidence he has exhibited these symptoms for years.

¶ 62    The fact that petitioner claimed to have been the subject of a false report by a disgruntled girlfriend is so far afield of the doctors' diagnoses and the facts of this case that its use to argue it as a defense to commitment borders on insult. After a trial petitioner was convicted of repeatedly raping his victim and trying to kill her, was imprisoned, and then committed; and throughout all of it, petitioner has continuously and consistently engaged in behaviors two psychologists have opined establish that petitioner has a mental disorder under the Act.

¶ 63    The petition fails to set forth facts sufficient to support a meritorious defense on these grounds. Petitioner's so-called "defense" lacks any merit whatsoever. Therefore, the trial court's judgment denying petitioner's 2-1401 petition on these grounds is affirmed.

¶ 64    Finally, petitioner argues the petition sets forth sufficient facts to support a meritorious defense to his commitment in that petitioner alleged facts to support a claim he does not suffer from OSPD, Nonconsent "because it cannot be diagnosed reliably." In support of this argument, petitioner places sole reliance on one article that says that sometimes evaluators claim the presence of a sexual disorder based on just a history of sex offenses without any other evidence. Petitioner then points to portions of his various evaluations that note that petitioner has committed multiple sex offenses and claims petitioner's evaluators have done precisely what this one article warned against. We wholeheartedly disagree.

¶ 65    A "meritorious defense or claim" is one that would have prevented the rendition of the original judgment had it been presented or of record when the judgment was entered. See *Malkin v. Malkin*, 301 Ill. App. 3d 303, 310 (1998). "It must appear a retrial will result in a judgment different than the one sought to be vacated." *Hunter v. Hunter*, 39 Ill. App. 3d 220, 222 (1976). See also *Fitzgerald v. Power*, 225 Ill. App. 118, 120 (1922) ("A motion to vacate a judgment is addressed to the equitable powers of the court and such powers ought never to be exercised where it appears that on a new trial or hearing the same judgment would be rendered."). The litany of "diagnostic evidence apart from the sexual offenses themselves" in Drs. Tsoflias's and Wood's reports is overwhelming. See *supra*, ¶¶ 7-15; 18-26. Had this article been on record in a trial of the petition to commit petitioner, we find, as a matter of law, that it would not have made a bit of difference.

¶ 66    Petitioner has failed to set forth sufficient facts to support a meritorious defense or claim that he does not have this particular mental disorder becomes sometimes some evaluators might misdiagnose it. Therefore, the trial court's judgment on this basis is affirmed.

¶ 67　The remainder of petitioner's arguments focus on his alleged diligence in presenting these defenses and in filing his 2-1401 petition. As we have found that nowhere in the petition did petitioner set forth sufficient facts to support a meritorious claim or defense, we have no need to decide whether petitioner was, or needed to be, diligent in presenting and raising them.

¶ 68　　　　　　　　　　　　　　CONCLUSION

¶ 69　For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 70　Affirmed.